STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. RICHARD O. TYSON, DEFENDANT-APPELLANT.

Argued October 19, 1964—Decided November 16, 1964.

*Mr. Nathan H. Sisselman* argued the cause for the defendant-appellant (*Messrs. Addonizio, Sisselman, Nitti & Gordon,* attorneys).

*Mr. Peter Murray,* Assistant Prosecutor, argued the cause for the plaintiff-respondent (*Mr. Brendan T. Byrne,* Prosecutor of Essex County, attorney; *Mr. C. William Caruso,* Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

PROCTOR, J. The defendant Richard Tyson was convicted of robbery (*N. J. S.* 2A:141–1) and of possession of a dangerous weapon when committing the robbery (*N. J. S.* 2A:151–5). He was sentenced to imprisonment for 7 to 14 years on the robbery count and 2 to 5 years on the possession count, the sentences to run consecutively. He appealed to the Appellate Division. We certified the matter before argument there.

The State's evidence showed that at about 7:00 A. M. on February 22, 1962, two men gained entry to the Belleville home of Albert Volk, his wife and daughter, Virginia. They ransacked the rooms on the first floor, then proceeded to the sleeping quarters on the second floor where they threatened the awakened Volks with a knife and a toy revolver. The intruders wore silk stocking masks, but one, later identified as Tyson, lifted his mask for about half an hour during the two hours the pair ransacked the Volks' home. They took a number of articles, including a TV set, a record player, electric razors, watches, jewelry, and cash to their car, which was parked in the driveway of the house. They then bound and gagged the Volks and locked them in the bathroom. As they

made their get-away in the car, Virginia, who had loosened her bonds, looked through the window and identified the car as a red Buick with a black top. When the police arrived, Virginia told them that she thought she recognized one of the robbers as a man named Hawrylak, whom she had met some time before. About an hour thereafter, Tyson and Hawrylak were intercepted by the Bloomfield police, who had been alerted by police teletype to be on the lookout for a red and black Buick. When apprehended, Tyson and Hawrylak had in their car and on their persons the various articles stolen from the Volk home. Later that morning both men were positively identified as the robbers by the Volks at the Bloomfield police headquarters. The accused were then taken to Belleville police headquarters, where Tyson gave a written statement admitting his participation in the robbery.

Hawrylak pleaded guilty to the robbery charge (the possession charge was later dismissed on motion of the prosecutor) and, at the time of Tyson's trial, was awaiting sentence. Tyson did not take the stand in his own behalf at his trial and he offered Hawrylak as his only witness. Hawrylak, when questioned by defense counsel, admitted knowing Tyson for a number of years but he declined, on the ground that he might incriminate himself, to answer questions as to whether he had borrowed the car used in the robbery, whether he recognized one of the woman's stockings used as a mask, whether he knew Virginia, whether Tyson was with him at any time on the day of the robbery, and when he had last seen Tyson prior to the crime. The trial court sustained his refusal to answer these questions.

On this appeal Tyson first contends that Hawrylak could not invoke the privilege against self-incrimination because he had earlier pleaded guilty to the crime and therefore had no reasonable cause to apprehend a criminal prosecution. He cites *United States v. Gernie*, 252 *F. 2d* 664 (2 *Cir*. 1958), *cert.* denied 356 *U. S.* 968, 78 *S. Ct.* 1006, 2 *L. Ed. 2d* 1073 (1958), rehearing denied 357 *U. S.* 944, 78 *S. Ct.* 1383, 2 *L. Ed. 2d* 1558 (1958). That case involved a conspiracy to violate the

narcotics laws. The government called as its witness Harell, who had previously pleaded guilty to the possession of narcotics and had received a five-year sentence. When the prosecutor asked him where he obtained the narcotics, Harell refused to answer on the ground that it might incriminate him and the judge sustained his refusal. On appeal, the defendant argued that it was error for the government to call Harell in view of his refusal to testify regarding the source of the narcotics of which he had admitted possession. The court held that the government had the right to produce the witness, even though it had reason to believe the witness would refuse to testify, in order to show the jury that it was bringing forward all available witnesses. The court added that Harell could have been compelled to answer the question since he had pleaded guilty and could not fear further incrimination. However, this *dictum* failed to note that the witness not only had pleaded guilty, but also had been sentenced. The two cases cited by the court, *United States v. Romero*, 249 *F*. 2d 371 (2 *Cir*. 1957), and *United States v. Cioffi*, 242 *F*. 2d 473 (2 *Cir*. 1957), *cert*. denied 353 *U. S*. 975, 77 *S. Ct*. 1060, 1 *L. Ed*. 2d 1137 (1957), also involved witnesses who had been sentenced. There is also *dictum* in *Namet v. United States*, 373 *U. S*. 179, 83 *S. Ct*. 1151, 10 *L. Ed*. 2d 278 (1963), to the effect that there is substantial authority for the proposition that a plea of guilty erases the testimonial privilege. But the only case therein cited was *Reina v. United States*, 364 *U. S*. 507, 81 *S. Ct*. 260, 5 *L. Ed*. 2d 249 (1960). That case involved a witness who already had been sentenced. Furthermore, the authorities cited by the court did not concern themselves with the withdrawal of a guilty plea before sentence: *United States v. Romero, supra*; 8 *Wigmore, Evidence* § 2279 (*3d ed*. 1940) ; *Brown v. Walker*, 161 *U. S*. 591, 16 *S. Ct*. 644, 40 *L. Ed*. 819 (1896).

In the present case Hawrylak had not been sentenced at the time he was called by the defendant to testify. The issue, therefore, is whether a witness who has pleaded guilty to a certain crime but has not yet been sentenced has reasonable

cause to believe that his testimony regarding that crime can incriminate him.

The privilege against self-incrimination is predicated upon the propositions that an accused is presumed innocent until proven guilty, and that he has the right by virtue of that presumption to require the State to produce evidence which establishes his guilt. A plea of guilty is a waiver of the right to require the State to prove the accused guilty beyond a reasonable doubt. In recognition of the fundamental nature of the right, New Jersey has promulgated *R. R.* 3 :7-1 (a), which permits a defendant to move to withdraw his guilty plea. The rule contemplates that a decision to plead guilty is not, in every case, irrevocable. While a motion to withdraw a plea before sentence is not a matter of right but of judicial discretion, our courts have liberally exercised their discretion to enable a defendant who asserts his innocence to withdraw his plea. *State v. Deutsch,* 34 *N. J.* 190, 198 (1961). That case also establishes that one of the factors to be considered upon a motion to withdraw a plea is the apparent guilt or innocence of the accused. *Id.,* at *p.* 204. Had Hawrylak been forced to answer the questions put to him by defense counsel, his answers, if incriminating, would have been persuasive grounds for a court in the exercise of its discretion to deny a motion to withdraw his plea. Thus his incriminating testimony would have jeopardized his opportunity to require the State to prove his guilt beyond a reasonable doubt. Hence, Hawrylak would be forced to supply evidence from his own lips which would tend, as a practical matter, to make his guilty plea irrevocable. We think this amounts to self-incrimination. We therefore hold that where a witness has pleaded guilty to a criminal charge but has not yet been sentenced, he retains his constitutional privilege to refuse to answer questions on the ground that his answers could incriminate him of that charge.

We note that it has been held that a witness may refuse to testify concerning the crime as to which he has been convicted, been sentenced, and even served his term, if his testimony

could lead to incrimination for other crimes. *Malloy v. Hogan,* 378 *U. S.* 1, 84 *S. Ct.* 1489, 12 *L. Ed. 2d* 653 (1964). Under the liberal interpretation of the extent of the privilege against self-incrimination announced in *United States v. Hoffman,* 341 *U. S.* 479, 71 *S. Ct.* 814, 95 *L. Ed.* 1118 (1951), and *Malloy v. Hogan, supra,* and in our New Jersey statute, *N. J. S.* 2A:84A–18, which has been patterned after the language of *Hoffman* (see *Nusbaum v. Newark Morning Ledger Co.,* 33 *N. J.* 419, 424 (1960)), Hawrylak's answers might have tended to incriminate him for other crimes. For example, it appears that at the time of the trial the State could still have prosecuted Hawrylak for possession of a weapon during the robbery. *N. J. S.* 2A:151–5. However, this point has not been raised by the parties before us.

The defendant's final contention is that his sentence was manifestly excessive. *State v. Johnson,* 67 *N. J. Super.* 414 (*App. Div.* 1961). The term imposed upon the defendant was well within the statutory limits established by the Legislature for the offenses involved. A sentence will not be revised by an appellate court if within the statutory limits in the absence of a clear showing of abuse of discretion. *State v. Benes,* 16 *N. J.* 389, 396 (1954). The nature of the crimes and their factual details do not suggest that the sentence was beyond a proper exercise of discretion. The thrust of defendant's argument is that he received a more severe sentence than did Hawrylak although Hawrylak's prior record was worse. This in itself is no ground for finding defendant's sentence was manifestly excessive. *State v. Gentile,* 41 *N. J.* 58 (1963).

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, PROCTOR, HALL and HANEMAN—5.

*For reversal*—None.