393 A.2d 313

COMMONWEALTH of Pennsylvania

v.

Jimmie T. STRICKLER, Appellant.

Supreme Court of Pennsylvania.

Submitted Oct. 17, 1977.

Decided Oct. 5, 1978.

Paul W. Brann, Matson, Brann & Bromfield, Lewisburg, for appellant.

James F. McClure, Jr., Acting Dist. Atty., Lewisburg, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POM-
EROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

On August 27, 1973, appellant, Jimmie T. Strickler, plead-
ed guilty to a charge of being an accessory after the fact to
an armed robbery in Union County. On April 16, 1974, he
was sentenced to a term of fifteen months' imprisonment,
sentence to commence on May 1, 1973. He took no appeal
from the judgment of sentence, and on June 1, 1974, he was
paroled to the custody of another county where he was to
serve unrelated sentences of imprisonment.

Subsequently, on September 11, 1974, after he had com-
pleted his sentence on the accessory charge, Strickler was
called by the Commonwealth to testify at the Union County
trial of one Craig Timothy Shirk for the purpose of identify-
ing Shirk as a principal in the same armed robbery to which
Strickler had pleaded guilty as an accessory. Strickler,
however, invoked his Fifth Amendment privilege against
self-incrimination and refused to testify. The trial judge
advised Strickler, who was represented by counsel, that,
because he had pleaded guilty, been sentenced, and failed to
take a timely appeal with respect to a charge based upon the
same events about which he was scheduled to testify, and
because, pursuant to this Court's decision in *Commonwealth
v. Campana*, 455 Pa. 622, 314 A.2d 854 (1974), cert. denied,
417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974), he could
not then be prosecuted for any additional charges based
upon these events, he had no grounds to fear self-incrimina-
tion as a result of his testimony.

Strickler, however, informed the judge that he was pres-
ently in the process of preparing a petition for post-convic-
tion relief and that, in connection with this, he feared
anything he said might later be used against him. The
judge observed that no such petition was then pending
before the court. The district attorney then asserted that

"the Commonwealth grants the witness immunity from prosecution with regards to any other matter, transaction arising out of facts involved in the case for which he was previously sentenced." The judge again advised Strickler that he could not be subjected to further prosecution based upon the facts about which he was to testify and that he therefore had no basis to assert his privilege against self-incrimination with regard to this testimony; he ordered Strickler to testify and warned him that if he persisted in his refusal to do so he could be found in contempt of court. When Strickler still refused to testify, the judge summarily found him in direct criminal contempt and sentenced him to imprisonment for six months "to begin and date from the time [he] is released from his present confinement." The judge nevertheless offered him an opportunity to purge his contempt by testifying, but he again refused to do so. As a result of this refusal, the Commonwealth moved that a nolle prosequi be entered in the case against Shirk; the judge granted the motion, and Shirk was discharged. Strickler appealed his criminal contempt conviction to the Superior Court, but on October 20, 1976, the appeal was properly transferred to this Court.[1]

In *Commonwealth v. Carrera*, 424 Pa. 551, 553–54, 227 A.2d 627, 629 (1967), this Court stated:

"When an individual . . . is called to testify . . in a judicial proceeding, he or she is not exonerated from answering questions merely upon the declaration that in so doing it would be self-incriminating. It is always for the court to judge if the silence is justified, and an illusory claim should be rejected. However, for the court to properly overrule the claim of privilege, it must be *perfectly clear* from a careful consideration of all the circumstances, that the witness is mistaken in the apprehension of self-incrimination and the answers demanded *cannot possibly* have such tendency . . . ." (Emphasis in original.)

1. See the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(5), 17 P.S. § 211.202(5) (Supp.1978–79).

Strickler argues that the trial judge erred in overruling his claim of privilege and ordering him to testify on two grounds: (1) if his contemplated petition for post-conviction relief were to succeed in causing his conviction as an accessory to be invalidated, his testimony at the Shirk trial might be used against him in a new trial on the accessory charge, and (2) his testimony might subject him to new charges arising out of the incident about which he was to testify. He further contends that the district attorney's purported grant of immunity from further prosecution was of no significance, since he was entitled to reject immunity for "his own reasons."

We agree with Strickler that the purported grant of immunity is not here controlling, but not for the reason he advances. It is clear that a valid grant of immunity is constitutionally sufficient "to supplant the privilege if the witness is protected against use of the compelled testimony and all its fruits." *In re Falone*, 464 Pa. 42, 48, 346 A.2d 9, 12 (1975). It is also clear, however, that since in Pennsylvania district attorneys lack the statutory authority to grant witnesses immunity in criminal prosecutions, such a promise is not legally binding or effective. *Commonwealth v. Carrera, supra.* Accord, *Commonwealth v. Hawthorne*, 428 Pa. 260, 236 A.2d 519 (1968); *Commonwealth v. Kaye*, 232 Pa.Super. 513, 335 A.2d 430 (1975). Thus, although Strickler is mistaken in his assertion that he was entitled to reject immunity for his own reasons, instantly the purported grant of immunity was invalid.[2] We turn therefore to his argu-

---

**2.** We do not here decide whether truthful testimony actually given pursuant to an unauthorized or invalid grant of immunity may ever subsequently be used against the witness in the courts of this Commonwealth. Compare *United States v. Ford*, 99 U.S. 594, 25 L.Ed. 399 (1878) (holding that such testimony may not be pleaded in bar of, or raised as a defense in, a subsequent prosecution but creates only an equitable right to an executive pardon which the court will take note of by staying the prosecution to permit an application to the pardoning power), with *Commonwealth v. Bell*, 145 Pa. 374, 391, 22 A. 641, 644 (1891) (dictum that where a court erroneously holds that immunity applies and orders a witness to testify, "[n]o court would permit the testimony of a witness, truthfully given under such

ments that the judge improperly overruled his claim of privilege.

■ With regard to Strickler's assertion that his testimony in the Shirk trial might subject him to new charges in connection with the armed robbery about which he was scheduled to testify, we observe that Section 110 of the Crimes Code,[3] in addition to *Commonwealth v. Campana, supra*, cited by the trial judge,[4] requires in general that all charges against a defendant "based on the same conduct or arising from the same criminal episode" be brought in a single proceeding. Thus, it would appear that any subsequent prosecution of Strickler based upon the armed robbery about which he was to testify and in connection with which he had already been convicted would have been barred under Pennsylvania law.

Section 110(1)(ii) does make exception for an offense which, though based on the same conduct or arising from the same criminal episode, was not "known to the appropriate prosecuting officer at the time of the commencement of the first trial," but there is nothing in the instant record to indicate that the district attorney was not fully aware of the circumstances surrounding the criminal episode in question and the extent of Strickler's involvement therein; indeed, the record reveals that the district attorney's attempt to grant Strickler immunity was at least in part in response to and apparently intended to confirm the trial judge's view that the *Campana* principle protected Strickler from prosecution on new charges based on his testimony. Section 110(1)(iii)(A) makes another exception where "the offense of

circumstances, to be afterwards used against him in any judicial proceeding").

3. 18 Pa.C.S.A. § 110.

4. In *Commonwealth v. Campana*, 455 Pa. 622, 314 A.2d 854 (1974), cert. denied, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974), this Court concluded that its previous decision in *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432 (1973), vacated and remanded *sub nom. Pennsylvania v. Campana*, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), was pursuant to our supervisory power and thus rested upon a state ground independent of the federal constitution.

which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other *and* the law defining each of such offenses is intended to present a *substantially* different harm or evil" (emphasis added). Strickler argues that as a result of his testimony he might have been charged as a principal in the armed robbery, with receiving stolen goods, or with aggravated assault and battery, but he does not argue, and we are not otherwise persuaded, that the offense for which he was previously convicted, hindering apprehension or prosecution with respect to an armed robbery,[5] was a substantially different crime or evil so as to subject him to additional prosecution on these charges.[6] We thus conclude that the trial judge did not err in overruling Strickler's claim of privilege on this ground.

■ As for his contention that he feared self-incrimination because of the possibility that his forthcoming petition for post-conviction relief might win him a new trial on the accessory charge, we observe initially that as a general rule a plea of guilty to a criminal charge is regarded as a waiver of the privilege against self-incrimination with respect to that charge. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). See also *Commonwealth ex rel. Blackman v. Banmiller,* 405 Pa. 560, 176 A.2d 682 (1962); *Commonwealth v. Tracey,* 137 Pa.Super. 221, 8 A.2d 622 (1939). Nevertheless, a guilty plea may subsequently be found to be invalid and a conviction based upon it reversed. See, e. g., *Boykin v. Alabama, supra; Commonwealth v. Ingram,* 455 Pa. 198, 316 A.2d 77 (1974). Furthermore, in Pennsylvania, Section 3 of the Post Conviction Hearing Act (PCHA), Act of January 25, 1966, P.L. (1965) 1580, § 3, 19 P.S. § 1180–3 (Supp.1978–79), specifically provides for relief

5. See 18 Pa.C.S.A. § 5105.

6. Compare *Commonwealth v. Campana,* 452 Pa. 233, 259–260, 304 A.2d 432, 452 (1973) (concurring opinion, Eagen, J., joined by Jones, C. J.) ("all part of a continuous and uninterrupted conduct and directed to the accomplishment of a single criminal objective").

from a conviction based upon "[a] plea of guilty unlawfully induced" if this issue "has not been finally litigated or waived," even though the issue has not been raised on appeal. Clearly, if a guilty plea may subsequently be found invalid, it cannot in itself inevitably be said to constitute a valid waiver of the privilege against self-incrimination; nor can it be inevitably concluded as a matter of law that one who has pleaded guilty to a charge can thereafter have no reasonable basis to fear self-incrimination on that charge.

Moreover, in *Commonwealth v. Rodgers*, 472 Pa. 435, 372 A.2d 771 (1977), a majority of this Court affirmed a murder conviction despite the fact that the trial judge had permitted a witness for the prosecution, whose own conviction for the murder was final but who stated he was preparing a petition for post-conviction relief, to invoke his privilege against self-incrimination and refuse to testify; the judge had thus found the witness unavailable and permitted the Commonwealth to read to the jury his testimony from the appellant's preliminary hearing. In the opinion announcing the judgment Mr. Justice Roberts, speaking for himself and Mr. Justice O'Brien,[7] addressed the issue this way:

"We cannot say that the possibility that an individual whose conviction is final will obtain collateral relief is so remote as to warrant a per se rule that the privilege cannot be invoked in any circumstance. We therefore reject the suggestion that a witness who is preparing a collateral attack on his conviction has no basis, as a matter of law, to apprehend a danger of future prosecution arising from the matters about which he is called to testify. Each case must be decided on its own facts and the information available to the trial judge who must rule on the claim of privilege.

"We hold that the determination whether a witness whose conviction has been finalized on appeal and who is preparing a collateral attack may invoke the privilege against self-incrimination is properly left to the sound

7. Mr. Justice Pomeroy and the writer of this opinion concurred in the result in *Rodgers*.

discretion of the trial court. The trial court must consider all the circumstances and decide whether the witness has reasonable cause to apprehend danger of self-incrimination. See *Commonwealth v. Carrera,* supra."

472 Pa. at 457, 372 A.2d at 781.

■ Even assuming, however, "the possibility that an individual whose conviction is final will obtain collateral relief is [not] so remote as to warrant a per se rule that the privilege cannot be invoked in any circumstances," and that "[e]ach case must be decided on its own facts and the information available to the trial judge who must rule on the claim of privilege," we cannot conclude that in the circumstances of the instant case the trial judge erred in overruling Strickler's claim of privilege on this ground either.

Although Strickler had petitioned the court for transcripts on April 23, 1974,[8] by the time of the Shirk trial the following September not only had he failed to take a direct appeal or file a PCHA petition, but his fifteen-month sentence on the accessory charge had by this time been completed. Although we cannot assume that because his sentence had been served he might not subsequently have been able to attack this conviction collaterally,[9] we cannot perceive that he had any reasonable basis to fear self-incrimination in a new trial on a charge for which he had already completed

8. Since Strickler was sentenced on April 16, 1974, he would have been entitled to take a direct appeal from the judgment of sentence at the time he petitioned the court for transcripts.

9. See *Commonwealth v. Doria,* 468 Pa. 534, 364 A.2d 322 (1976); *Commonwealth v. Sheehan,* 446 Pa. 35, 285 A.2d 465 (1971). It appears that on March 29, 1976, Strickler did file a PCHA petition attacking the validity of his guilty plea, and the court denied this petition on the same day on the ground that it was moot. Strickler appealed the order denying his petition to the Superior Court assigning as error, *inter alia,* both the PCHA court's conclusion of mootness and the fact that the judge who ruled on his petition had been the district attorney at the time he entered his guilty plea. On May 5, 1978, the Superior Court without opinion vacated the order of the PCHA court and remanded for a new hearing.

his sentence.[10] See *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (constitutional protection against double jeopardy requires that punishment already exacted for an offense be fully credited in imposing a new sentence for the same offense; due process requires that reasons for imposition of a more severe sentence after retrial must affirmatively appear in the record and must be based on objective information concerning the defendant's identifiable conduct after the original sentencing proceeding). Thus, in our view, the judge was justified in determining that Strickler had no reasonable basis to fear self-incrimination and in ordering him to testify at the Shirk trial. We also conclude that he was justified in summarily finding Strickler guilty of direct criminal contempt and sentencing him to a six-month term of imprisonment for his refusal to testify.

 The Act of June 16, 1836, P.L. 784, § 23, 17 P.S. § 2041, in pertinent part provides:

"The power of the several courts of this commonwealth to issue attachments and to inflict summary punishments for contempts of court shall be restricted to the following cases, to-wit:

\* \* \* \* \* \*

"II. *To disobedience* or neglect *by* officers, parties, jurors or *witnesses of or to the lawful process of the court* . . . ." (Emphasis added.)

There was clearly sufficient basis for the trial judge to find that the deliberate and persistent refusal of Strickler, who

---

10. Nor, in our view, was there a reasonable basis to fear self-incrimination from his testimony at the Shirk trial in the PCHA proceedings themselves. The purpose of such proceedings is to provide "relief from convictions obtained and sentences imposed without due process of law." PCHA, 19 P.S. § 1180–2. Thus, PCHA proceedings are concerned not with determining substantive guilt or innocence but with rectifying prior violations of due process. Compare *State v. Tyson*, 43 N.J. 411, 204 A.2d 864 (1964), cert. denied, 380 U.S. 987, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1965) (probable guilt a factor to be considered by trial court in motion to withdraw guilty plea so that privilege was properly invoked after guilty plea but before sentencing).

was represented by counsel,[11] to testify, despite appropriate and repeated orders from the judge that he do so, was in contemptuous defiance of the court's authority.[12] Strickler's intransigence as a witness, which ultimately caused the Shirk prosecution to be aborted, plainly warranted the exercise of the court's recognized power to punish summarily for direct criminal contempt.[13] See *United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975); *Commonwealth v. Patterson*, 452 Pa. 457, 308 A.2d 90 (1973).

 Strickler, however, contends that the court, in exercising this traditional power, deprived him of the constitutional right to trial by jury afforded one who is accused of a major crime. In support of this contention, he relies upon *Baldwin v. New York*, 399 U.S. 66, 69, 90 S.Ct. 1886, 1888, 26 L.Ed.2d 437 (1970), wherein a plurality of the Supreme Court of the United States declared that "no offense can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized" (footnote omitted). Strickler concedes that his sentence was actually limited to six months, but he urges that since there is no maximum sentence for direct criminal contempt, he could have been sentenced to a term greater than six months and, because of this potentially greater sentence, he had a right to a jury trial. This contention, however, was specifically rejected by the Supreme Court in *Taylor v.*

11. Compare *Commonwealth v. Crawford*, 466 Pa. 269, 352 A.2d 52 (1976).

12. In this context we note, as did the trial judge, Strickler's statement before imposition of sentence: "I do have contempt of this Court."

13. Although Strickler was initially given an opportunity to purge himself of contempt by testifying against Shirk, the entrance of a nolle prosequi in the Shirk case because Strickler persisted in his refusal to testify left him powerless to purge his contempt civilly. Nevertheless, he remained subject to criminal punishment, since it is well-settled that the same conduct may give rise to both civil and criminal contempt. See *Yates v. United States*, 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957). Compare *In re Martorano*, 464 Pa. 66, 346 A.2d 22 (1975).

*Hayes,* 418 U.S. 488, 495, 94 S.Ct. 2697, 2701, 41 L.Ed.2d 897 (1974), wherein it was stated:

". . . our cases hold that petty contempt like other criminal offenses may be tried without a jury and that contempt of court is a petty offense when the penalty *actually imposed* does not exceed six months or a longer penalty has not been *expressly* authorized by statute." (Emphasis added.)

Accord, *Codispoti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); *Commonwealth v. Mayberry,* 459 Pa. 91, 327 A.2d 86 (1974).

 Finally, Strickler argues that his sentence "to begin and date from the time [he] is released from his present confinement" is "void for vagueness." This contention is without merit. The record reveals that before he imposed sentence on Strickler the trial judge determined which of two concurrent sentences Strickler was presently serving was the longer and clearly indicated that the contempt sentence was to be consecutive to both of these concurrent terms.

Judgment of sentence affirmed.

ROBERTS, J., files a dissenting opinion in which MANDERINO, J., joins.

ROBERTS, Justice, dissenting.

The majority holds that the trial court did not abuse its discretion when it ordered appellant to testify despite his claim that his testimony was privileged under the fifth amendment to the United States Constitution and Article I, section nine of the Pennsylvania Constitution. In so doing, the majority places upon the witness the burden of proving that he is protected from testifying by the privilege against self-incrimination. The majority, in effect, requires appellant to protect himself from a criminal contempt conviction by demonstrating the merit of his Post Conviction Hearing Act petition. Moreover, he must convince the court, without revealing any incriminatory information, that his testimony

may reveal criminal conduct heretofore unknown to law enforcement officials. Such a holding places an undue burden on appellant's exercise of his state and federal rights against compelled self-incrimination.

> "There is no prerequisite to the exercise of the privilege against self-incrimination that the pleader must first establish affirmatively his good faith and lack of frivolity in entering the plea."

*Board of Public Education v. Intille*, 401 Pa. 1, 22, 163 A.2d 420, 430 (1960). I therefore dissent.

In *Commonwealth v. Rodgers*, 472 Pa. 435, 372 A.2d 771 (1977), this Court was asked to review the propriety of a trial court's grant of the witness' claim of privilege and the court's subsequent ruling that that witness was "unavailable" for purposes of the hearsay rule. Here, in sharp contrast, we are reviewing appellant's conviction of criminal contempt for refusing to testify after the court ruled the privilege against self-incrimination inapplicable. Whatever discretion the trial court possesses in granting a claim of the privilege, it is circumscribed where the privilege is denied. Indeed, the values inhering in the privilege and the established procedure for judicial administration of a witness' claim of privilege demand this conclusion. Id. (Opinion Announcing The Judgment of the Court).

In *Commonwealth v. Hawthorne*, 428 Pa. 260, 263, 236 A.2d 519, 521 (1968), this court unanimously held:

> " '. . . for the court to properly overrule the claim of privilege, it must be *perfectly clear* from a careful consideration of all the circumstances, that the witness is mistaken in the apprehension of self-incrimination and the answers demanded *cannot possibly* have such tendency: *Hoffman v. United States*, [341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951)].' " (Emphasis in original).

Id., 428 Pa. at 263, 236 A.2d at 521. See *Commonwealth v. Lenart*, 430 Pa. 144, 150, 242 A.2d 259, 263 (1968); *Commonwealth v. Carrera*, 424 Pa. 551, 553, 227 A.2d 627, 629 (1967). Moreover,

"if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."

*Hoffman v. United States*, 341 U.S. 479, 486–87, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

The burden of proving that the witness has reasonable cause to apprehend danger of self-incrimination cannot be put on the witness as the majority would have it. Under *Hawthorne*, for the trial court to rule the testimony is not privileged, it must be "perfectly clear" that the witness has absolutely no cause to apprehend danger of self-incrimination were he to be compelled to testify.

Here, the record indicates that appellant had reasonable cause to apprehend danger of self-incrimination. In the absence of any discussion regarding the substantive aspects of appellant's Post Conviction Hearing Act claim, it cannot be assumed that appellant unreasonably believed that his petition would result in an order for a new trial. In the event appellant is retried on charges of being an accomplice after the fact, the potentially incriminatory nature of his testimony is obvious.[1]

Further, I am unable to accept the majority's conclusion that appellant was clearly mistaken in his fear that he could be subject to subsequent prosecution based upon the armed robbery with regard to which he was to testify. Section

1. The majority misinterprets the significance of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) in this context. *Pearce* held that in order to impose a more severe sentence after retrial, objective reasons for so doing must appear in the record. That rule enhances the potentially incriminating nature of appellant's testimony. In direct response to a question, he may well have been forced to reveal information that would support an increased sentence on retrial.

110(1)(ii) of the Crimes Code and our decision in *Common-wealth v. Campana*, 452 Pa. 233, 304 A.2d 432 (1973), vacated and remanded, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), on remand, 455 Pa. 622, 314 A.2d 854 (1974), cert. denied, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974), allow subsequent prosecution based on conduct arising from the same criminal episode which was not "known to the appropriate prosecuting officer at the time of the commencement of the first trial." [2] The majority would place the burden on appellant of proving that the District Attorney was not aware of the information appellant's testimony could reveal at the time of the first prosecution. Such an allocation of the burden of proof is clearly unsupported by our prior decisions in *Lenart* and *Carrera*. To sustain this burden of proof, appellant would "be compelled to surrender the very protection which the privilege is designed to guarantee," *Hoffman v. U. S.*, supra. Indeed, injurious disclosure could result from any explanation that appellant would have to make to fulfill this burden.

Moreover, I can find no merit in the majority's view that the District Attorney's unauthorized attempt to grant appellant immunity indicated that, at the time of appellant's prosecution, the District Attorney was aware of the subject matter of appellant's present testimony. Logic does not support such a conclusion. The District Attorney's promise of immunity may well have been fostered by his interest in convicting the defendant then on trial, rather than certainty that he would be barred by *Campana* from subsequently prosecuting appellant. Further, the Federal Constitution demands that in order to compel privileged testimony there must be a *valid* grant of immunity,[3] coextensive with the boundaries of the Federal constitutional protection against self-incrimination. See *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) ("use immunity" satisfies the fifth amendment).

**2.** 18 Pa.C.S.A. § 110(1)(ii).

**3.** District Attorneys in the Commonwealth of Pennsylvania have no statutory authority to grant immunity in criminal prosecutions. *Commonwealth v. Carrera*, 424 Pa. at 554–55, 227 A.2d at 630.

595

Finally, there is no indication on the record that the trial court considered the total scope of the privilege before he sanctioned appellant's failure to testify. In *Hoffman v. U. S., supra,* the Supreme Court stated:

> "The privilege afforded not only extends to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute."

Appellant may have been justifiably concerned that his testimony would provide the essential link in a chain connecting him with a wholly different criminal episode than the one for which he had been previously convicted. Even to state that such a fear is a basis for claiming the privilege endangers the very interests that the privilege protects. The record does not address the question whether under the facts and circumstances known to the trial judge there was any reasonable cause for appellant to fear incrimination of this nature.

A careful consideration of all the circumstances appearing on the record does not reveal that it is "perfectly clear" that appellant mistakenly feared the testimony demanded could tend to incriminate him. I would reverse the judgment of sentence and discharge the appellant.

MANDERINO, J., joins in this dissenting opinion.