**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Joan Orie MELVIN, Appellant.**

Superior Court of Pennsylvania.

Application filed Sept. 24, 2013.

Filed Nov. 6, 2013.

Patrick A. Casey, Scranton, for appellant.

Michael W. Streily, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: BENDER, P.J., DONOHUE and FITZGERALD *, JJ.

OPINION BY DONOHUE, J.:

Appellant, Joan Orie Melvin ("Orie Melvin"), filed an Application for Stay of Criminal Sentence Requiring Appellant to Write Letters of Apology Pending Disposition of this Direct Appeal (hereinafter, the "Application for Stay"), in which she contends that the portion of her criminal sentence requiring her to write apology letters to the victims of her crimes violates her right against self-incrimination pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution. For the reasons that follow, we grant the requested stay.

On February 21, 2013, a jury convicted Orie Melvin of three counts of theft of services with a value greater than $2,000, 18 Pa.C.S.A. § 3926(b); one count of criminal conspiracy for promoting or facilitating theft of services, 18 Pa.C.S.A. §§ 903(a)(1), 3926(b); one count of misapplication of entrusted property valued at more than $50, 18 Pa.C.S.A. § 4113(a), (b); and one count of criminal conspiracy for promoting or facilitating the crime of tampering with physical evidence, 18 Pa.C.S.A. § 903(a)(1), § 4910. The trial court initially sentenced Orie Melvin on May 7, 2013, and modified the sentence on May 14, 2013. Pursuant to the sentencing transcript for the May 14, 2013 proceedings as well as a "Correct-

ed Amended Order of Sentence" issued thereafter, Orie Melvin's sentence consists of, *inter alia,* three consecutive sentences of one year of county intermediate punishment (house arrest with electronic monitoring), to be followed by two years of probation. N.T., 5/14/2013, at 2–3; Corrected Amended Order of Sentence, 5/17/2013, at 1.

With respect to the county intermediate punishment, the trial court imposed a number of conditions, including an obligation to volunteer at a soup kitchen three times a week, compliance with DNA registration, removal from the bench of the Supreme Court of Pennsylvania, and a prohibition against the use of the terms "judge" or "justice." Corrected Amended Order of Sentence, 5/17/2013, at 1. In addition, and of importance for present purposes, the trial court imposed as a condition of county intermediate punishment an obligation to write letters of apology to (1) all sitting judges and justices in Pennsylvania, and (2) all former members of her judicial staff and the staff of her sister, former state senator Jane Orie. *Id.* The trial court made clear that the letters of apology to judges and justices had to be written on the front of a picture taken of Orie Melvin by the court photographer while she was wearing handcuffs. N.T., 5/14/2013, at 5.

At the May 14 sentencing hearing, counsel for Orie Melvin argued that the obligation to write the apology letters would violate her Fifth Amendment right against self-incrimination, and asked the trial court to either rescind it or stay it until final judgment in the case. *Id.* at 8–9. The trial court responded that he "still believe[d] that it is not a Fifth Amendment problem," but indicated that he would take it under advisement and issue an order within 10 days. *Id.* at 10–12. The trial court did not issue such an order, however,

---

* Former Justice specially assigned to the Superior Court.

and on September 27, 2013, Orie Melvin filed the Application for Stay[1] requesting that this Court issue an order "staying the portion of her sentence requiring her to write a letter of apology pending disposition of her appeal to this Court." Application for Stay, 9/27/2013, at 7.

Rule 1732 of the Pennsylvania Rules of Appellate Procedure governs applications for stays of trial court orders pending appeal. Rule 1732 provides, in relevant part, as follows:

**Rule 1732. Application for Stay or Injunction Pending Appeal**

(a) Application to lower court. Application for a stay of an order of a lower court pending appeal, or for approval of or modification of the terms of any supersedeas, or for an order suspending, modifying, restoring or granting an injunction during the pendency of an appeal, or for relief in the nature of peremptory mandamus, must ordinarily be made in the first instance to the lower court, except where a prior order under this chapter has been entered in the matter by the appellate court or a judge thereof.

(b) Contents of application for stay. An application for stay of an order of a lower court pending appeal, or for approval of or modification of the terms of any supersedeas, or for an order suspending, modifying, restoring or granting an injunction during the pendency of an appeal, or for relief in the nature of peremptory mandamus, may be made to the appellate court or to a judge thereof, but the application shall show that application to the lower court for the relief sought is not practicable, or that the lower court has denied an application, or has failed to afford the relief which the applicant requested, with the reasons given by the lower court for its action. The application shall also show the reasons for the relief requested and the facts relied upon, and if the facts are subject to dispute the application shall be supported by sworn or verified statements or copies thereof. With the application shall be filed such parts of the record as are relevant. Where practicable, the application should be accompanied by the briefs, if any, used in the lower court.

Pa.R.A.P. 1732(a)-(b).

The Application for Stay complies with the technical requirements under Rule 1732, including the obligation to set forth a prior effort to obtain a stay from the trial court in the first instance. While it is true that the trial court never formally denied Orie Melvin's request for a stay,[2] we conclude that its inaction on the request for more than four months (from May 14 until September 27) constitutes an effective denial. We also note that toward the end of this four-month period, the trial court issued a written opinion pursuant to Pa. R.A.P. 1925(a), in which it explained at some length why the requirement to write apology letters did not violate Orie Melvin's right against self-incrimination. Trial Court Opinion, 9/12/2013, at 28–31. Accordingly, we proceed to review the merits of the Application for Stay.

---

1. On or about October 2, 2013, this Court issued a temporary stay of the portion of the criminal sentence requiring apology letters pending final disposition by this Court of the Application for Stay.

2. The Commonwealth does not argue that the Application for Stay should be denied on this basis. *See* Commonwealth's Response to Appellant's Motion for Emergency Stay of the Honorable Lester G. Nauhaus' Sentencing Order Requiring Letters of Apology as a Condition of Appellant's Sentence of County Intermediate Punishment—House Arrest with Electronic Monitoring (hereinafter, the "Response to Application to Stay"), 10/8/2013, at 7 n. 7.

■ To obtain a stay pursuant to Rule 1732, an applicant must

> make a substantial case on the merits and show that without the stay, irreparable injury will be suffered. Additionally, before granting a request for a stay, the court must be satisfied the issuance of the stay will not substantially harm other interested parties in the proceedings and will not adversely affect the public interest.

*Maritrans G.P., Inc. v. Pepper, Hamilton & Scheetz,* 524 Pa. 415, 420, 573 A.2d 1001, 1003 (1990); *see also Pa. Public Utility Comm'n v. Process Gas Consumers Grp.,* 502 Pa. 545, 552–54, 467 A.2d 805, 808–09 (1983) (adopting the standards set forth in *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission,* 259 F.2d 921 (D.C.Cir.1958), as refined by *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841 (D.C.Cir.1977), as the criteria of Pennsylvania courts for the issuance of a stay pending appeal).

With respect to the first requirement of the *Maritrans* test, namely that the applicant must make a substantial case on the merits, in her Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, Orie Melvin lists 21 alleged errors by the trial court. Two of these alleged errors relate to her sentence:

> XX. The trial court erred in requiring Orie Melvin to write a letter of apology to her family, former staff, and Pennsylvania judges as part of her sentence in violation of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution.

> XXI. The condition that Orie Melvin write a letter of apology to her family,

former staff and Pennsylvania judges as part of her sentence is illegal under 42 Pa.C.S.A. § 9721 and should be stricken.

[Orie Melvin's] Statement of Errors Complained of on Appeal Pursuant to Pa. R.App. P.1925(b), 6/13/2013, at 4. In the Application for Stay, Orie Melvin argues that requiring her to write letters of apology under threat of incarceration is "tantamount to a coerced confession and cannot be squared with the constitutionally mandated privilege against self-incrimination." Application for Stay, 9/27/2013, at 5–6. She further asserts that "ordering a defendant to write a confession on a photograph of herself wearing handcuffs is both bizarre and abusive and plainly outside the scope of authority granted to a sentencing court under 42 Pa.C.S.A. § 9721." *Id.*

For present purposes, we need not, and will not, determine whether the portion of Orie Melvin's sentence requiring apology letters is ultimately illegal, either on constitutional or statutory grounds. Those issues will be decided by the merits panel ruling on Orie Melvin's appeal. Instead, we focus on the more narrow issue of whether the apology letters potentially violate Orie Melvin's constitutional right against self-incrimination. *solely during the pendency of this direct appeal.*

■ The Fifth Amendment to the United States Constitution, as applied to the states via the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself," and Article 1, Section 9 of the Pennsylvania Constitution holds that the accused in a criminal prosecution "cannot be compelled to give evidence against himself." U.S. CONST. amend. V; PA. CONST. art. 1, § 9.[3] The privilege against

---

**3.** In *Commonwealth v. Arroyo,* 555 Pa. 125, 723 A.2d 162 (1999), our Supreme Court reasoned that the right against self-incrimination under the Pennsylvania Constitution, found in Article I, Section 9, affords the same protection as its corresponding federal provision,

self-incrimination is "accorded liberal construction in favor of the right it was intended to secure," and may be. claimed when a witness "has reasonable cause to apprehend danger from a direct answer." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). In *Commonwealth v. Carrera,* 424 Pa. 551, 227 A.2d 627 (1967), *abrogated in part by statute on other grounds, Commonwealth v. Swinehart* 541 Pa. 500, 514, 664 A.2d 957, 964 (1995), our Supreme Court explained as follows:

> It is always for the court to judge if the silence is justified, and an illusory claim should be rejected. However, for the court to properly overrule the claim of privilege, it must be [p]erfectly clear from a careful consideration of all the circumstances, that the witness is mistaken in the apprehension of self-incrimination and the answers demanded [c]annot possibly have such tendency.

*Id.* at 553–54, 227 A.2d at 629.

■ While the Supreme Court of Pennsylvania has not squarely decided the issue of whether the privilege against self-incrimination survives the direct appeal process, its disposition of closely related controversies leads to the conclusion that it does. In *Commonwealth v. Rodgers,* 472 Pa. 435, 372 A.2d 771 (1977) (plurality), our Supreme Court affirmed a murder conviction despite the fact that the trial judge had permitted a witness, who was still litigating his own conviction for the same crime in the Pennsylvania courts, to invoke his privilege against self-incrimination and refuse to testify. In the Opinion Announcing the Judgment of the Court, Justice Roberts addressed the issue as follows:

> After conviction, direct appeal and collateral remedies available to an individual may result in a new trial. It is appar-

ent, then, that a conviction does not eliminate the possibility that an individual will later be prosecuted for the crime about which he is asked to testify. Accordingly, the weight of authority permits a witness whose conviction has not been finalized on *direct appeal* to invoke the privilege against self-incrimination and refuse to testify about the subject matter which formed the basis of his conviction.

*Id.* at 455, 372 A.2d at 780 (emphasis added).

Similarly, in *Commonwealth v. Strickler,* 481 Pa. 579, 393 A.2d 313 (1978), our Supreme Court refused to find that a defendant who has pled guilty to a crime may no longer invoke his right against self-incrimination. According to our Supreme Court, the defendant retains his right not to testify regarding his crimes at a subsequent proceeding since "a guilty plea may subsequently be found to be invalid and a conviction based upon it reversed." *Id.* at 586, 393 A.2d at 316. As a result, in light of the potential for a new trial, the Supreme Court concluded that it cannot be "inevitably concluded as a matter of law that one who has plead guilty to a charge can thereafter have no reasonable basis to fear self-incrimination on that charge." *Id.* at 587, 393 A.2d at 317.

Federal courts as well as courts of our sister states have likewise held that criminal defendants retain their rights against self-incrimination during the pendency of a direct appeal. *See, e.g., Crandell v. Louisiana State Penitentiary,* 2013 WL 4782818, at *9 (W.D.La. September 6, 2013) ("[M]ost courts hold that a convicted person can claim the privilege against self-incrimination as long as a direct appeal is pending or the time for direct appeal has

the Fifth Amendment. *Id.* at 134–35, 723 A.2d at 166–67; *Commonwealth v. Knoble,* 615 Pa. 285, 290, 42 A.3d 976, 979 (2012)

(same); *Commonwealth v. Rushing,* 71 A.3d 939, 950 (Pa.Super.2013) (same).

not expired.") (citing *U.S. v. Duchi,* 944 F.2d 391, 394 (8th Cir.1991)); *People v. Cantave,* 21 N.Y.3d 374, 380, 971 N.Y.S.2d 237, 993 N.E.2d 1257, 1262 (2013) ("When tried in the instant case, defendant had been convicted of rape, but he was pursuing a direct appeal, as of right, of that conviction. Thus, he remained at risk of self-incrimination until he exhausted his right to appeal."); *Bell v. U.S.,* 950 A.2d 56, 63 (D.C.2008) ("Here, any testimony given by Riley regarding his involvement in the armed robbery would have incriminated him in a retrial if his appeal were successful. Thus, as there was a possibility of future prosecution, the privilege was properly invoked.") (citing *Daniels v. United States,* 738 A.2d 240, 244 n. 7 (D.C. 1999) (Fifth Amendment privilege remains intact during the pendency of direct appeal)); *Ellison v. State,* 310 Md. 244, 259, 528 A.2d 1271, 1278 (1987) ("[T]he right to claim the privilege continues during the pendency of the direct appellate or sentence review proceedings."); *see also People v. Spicer,* 2010 WL 934212, at *2 (Mich. App. March 16, 2010), *appeal denied,* 488 Mich. 900, 789 N.W.2d 438 (2010); *Roth v. Commissioner of Corrections,* 759 N.W.2d 224, 228–29 (Minn.App.2008); *State v. Sutterfield,* 45 Or.App. 145, 147, 607 P.2d 789, 790 (1980).

■ Given the pendency of the current appeal and thus, the potential for a retrial, we must conclude that the requirement that Orie Melvin write apology letters violates her right against self-incrimination, at least until such time as her direct appeal in this Court has been decided. While the requirement that she write apology letters does not involve potentially incriminating testimony in a courtroom, it nevertheless creates evidence that could possibly be used against her in a later criminal proceeding and thus violates the plain language of the Pennsylvania Constitution that a person "cannot be compelled to give evidence against himself." PA.

CONST. art. 1, § 9. The unique nature of this portion of Orie Melvin's sentence assures that there are no prior decisions from Pennsylvania appellate courts that precisely govern our decision here, and neither Orie Melvin nor the Commonwealth have cited to any such authority. We are confident, however, that the privilege against self-incrimination should not be strictly limited to apply only to in-court testimony, as the privilege "protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Commonwealth v. Molina,* 33 A.3d 51, 64 (Pa.Super.2011) (*en banc* ), *appeal granted in part,* 616 Pa. 547, 51 A.3d 181 (2012) (quoting *Kastigar v. United States,* 406 U.S. 441, 444–45, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)).

As noted, Orie Melvin's Pa.R.A.P. 1925(b) statement lists 21 alleged trial court errors as grounds for reversal of her convictions. While this panel takes no position regarding the merits of any of the issues raised by Orie Melvin on appeal, the potential for a remand and retrial exists. If such an eventuality occurs, it is possible that her apology letters could be used as evidence against her. For this reason, we will grant the requested stay of this portion of her sentence while her direct appeal in this Court remains pending.

In its Response to Application to Stay, the Commonwealth offers two arguments in opposition to this determination. First, the Commonwealth contends that the apology letters do not implicate Orie Melvin's right against self-incrimination because the trial court, during the sentencing hearing on May 14, 2013, specifically instructed that they cannot ever be used against her:

THE COURT: ... Insofar as the [apology] letters are concerned and the pictures are concerned, while I believe it

should go without saying, I need to get this on the record, in the event that this matter goes to appeal and there is a new sentence granted, those letters and those pictures may not be used by the government insofar as evidence is concerned. I think that should go without saying since it's an Order of Court. It's not something that's voluntarily done. But I want it very, very clear.

N.T., 5/14/2013, at 4.

■■ We cannot agree that this admonition by the trial court constitutes sufficient grounds to refuse to recognize Orie Melvin's right against self-incrimination pending final resolution by this Court of her claims of illegality of sentence. The trial court's statement does not grant Orie Melvin immunity from prosecution[4] and places no enforceable limitations on the Commonwealth. Instead, it amounts to a prospective advisory evidentiary ruling regarding the admissibility of certain evidence at a future proceeding. We agree with the trial court's basic sentiment, namely that coerced admissions of guilt are generally inadmissible. *See, e.g., Commonwealth v. Bennett*, 498 Pa. 656, 659, 450 A.2d 970, 972 (1982). Without knowledge of the precise circumstances that might be presented at a future proceeding, however, including the specific contents of the apology letters, the purpose for which the Commonwealth would attempt to introduce them, or other currently unknown intervening statements or events, we cannot rule now that a future trial court would abuse its discretion by admitting the apology letters into evidence in a criminal proceeding against Orie Melvin. As our Supreme Court has repeatedly indicated, to deny the privilege against self-incrimination, it must be *"perfectly clear"* that the person "cannot possibly incriminate himself." *Commonwealth v. Long*, 533 Pa. 388, 401, 625 A.2d 630, 637 (1993) (emphasis in original) (quoting *Carrera*, 424 Pa. at 553–54, 227 A.2d at 629).[5] Because any future evidentiary ruling on the use of the apology letters is not "perfectly clear," Orie Melvin has reasonable cause to apprehend a danger of self-incrimination if she writes and sends them during the pendency of her appeal.

■ Second, the Commonwealth contends that Orie Melvin has already offered a voluntary apology on the record in this case, when she stated the following immediately prior to her initial sentencing:

[ORIE MELVIN]: Judge, the most important job I've ever held in my entire life is that as of a mother to my five daughters and my son. I have always prided myself in being a role model to my children.

And I am sorry for all the loss, suffering, and pain you have endured for the past five years.

I'm saddened and sorry for the circumstances that bring me before the Court today. And I am prepared for sentencing by this Court.

N.T., 5/7/2013, at 34–35; Response to Application to Stay, 10/8/2013, at 5. As such, the Commonwealth argues that Orie Mel-

---

4. Trial courts have no power to grant immunity to a witness except upon a request from a prosecutor. 42 Pa.C.S.A. § 5947; *Commonwealth v. Doolin*, 24 A.3d 998, 1005 (Pa.Super.), *appeal denied*, 612 Pa. 707, 31 A.3d 290 (2011).

5. *See also Chavez v. Martinez*, 538 U.S. 760, 768, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003) ("[W]e have long permitted the compulsion of incriminating testimony so long as those statements (or evidence derived from those statements) cannot be used against the speaker in any criminal case."). We leave to the merits panel the issue of the applicability of *Chavez*, a civil case involving a claim for damages under 42 U.S.C. § 1983, to Orie Melvin's claims of illegality of sentence in the present appeal.

vin has waived her privilege against self-incrimination, citing *Mitchell v. U.S.*, 526 U.S. 314, 321, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999).

In our view, Orie Melvin's brief statement to her children was not incriminating, and thus cannot serve as a basis for finding a waiver of the privilege here. Read in context, her remarks constitute nothing more than an acknowledgement of her regret that her children have suffered as a result of her legal troubles. Importantly, Orie Melvin did not admit her guilt for any of the crimes with which she was charged and convicted. Later in the same sentencing hearing, the trial court remarked that Orie Melvin has "consistently refused to accept any responsibility for any of the harm you have done to the people who worked with you, the electoral process, to your colleagues in the Judiciary, and most of all your family." N.T., 5/7/2013, at 49.

■ Alternatively, the Commonwealth argues that Orie Melvin does not need to incriminate herself in the apology letters, and can instead comply with the sentence by inserting in the letters the same "I'm saddened and sorry" language she offered in court to her children. Response to Application to Stay, 10/8/2013, at 6. We decline to deny the Application for Stay on this basis, in substantial part because we are not convinced that the trial court would find "apology letters" that contained no admission of responsibility for the crimes at issue to be in compliance with its sentencing order. In sentencing Orie Melvin, the trial court emphasized that her criminal behavior had left "a trail of victims," including her staff and her family, and had "brought shame to the Judiciary." N.T., 5/7/2013, at 51. In addition, in announcing its sentence, the trial court ordered Orie Melvin to "write letters of apology to everybody on your staff *that you made do illegal work,*" *id.* at 63 (emphasis

added), further evidencing its intention to require the apology letters to contain an acknowledgement of wrongdoing. Moreover, Orie Melvin's argument that the apology implicates her Fifth Amendment rights evidences her understanding that the trial court's sentence requires an admission of wrongdoing. Finally, the Commonwealth itself insists that the apology letters are a central part of the trial court's efforts to accomplish Orie Melvin's rehabilitation, since without them "the risk is high that [she] will remain the arrogant, power abusing, convicted felon who appeared before [the trial court] for sentencing." Response to Application to Stay, 10/8/2013, at 9. It is difficult to see how apology letters containing no admission of responsibility for any crime could accomplish such an ambitious rehabilitative goal.

■ Turning to the other requirements of the *Maritrans* test, they are all satisfied in this case. For the reasons explained hereinabove, Orie Melvin's constitutional privilege against self-incrimination could be compromised or waived if she is required to write and send the apology letters during the pendency of the current appeal, and thus she could suffer irreparable harm if the stay is not granted. The Commonwealth has not identified any harm to other interested parties or the public interest that would be substantially harmed by the issuance of the requested stay, and we are not aware of any, since if the sentence is upheld, the apology letters will be issued.

■ In its Response to Application for Stay, the Commonwealth requests that if this Court grants the stay, the case should be immediately remanded to the trial court for resentencing because the "entire sentencing scheme has been disrupted." Response to Application for Stay, 10/8/2013, at 18. We decline to do so for two reasons. First, the Commonwealth cites to

no rule or other authority that would permit us to remand the case to the trial court at this time, even if we were otherwise inclined to do so. Second, and more importantly, the grant of the Application for Stay does not disrupt the trial court's sentencing scheme. Instead, it only stays a portion of the sentencing order pending resolution by this Court of constitutional and statutory arguments regarding its legality. The appropriate audience for the Commonwealth's argument is the merits panel of this Court. If it determines that the requirement that Orie Melvin write and send apology letters is illegal, and that eliminating the requirement disrupts the sentencing scheme, the case will be remanded to the trial court for resentencing (including, if appropriate, a term of incarceration). At this juncture, we do no more than postpone the performance of this part of the sentence until Orie Melvin's direct appeal is decided.

Application for Stay GRANTED.