

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

Nos. PD-0453-07, PD-0454-07, PD-0455-07,
PD-0456-07, PD-0457-07, PD-0458-07,
PD-0459-07, & PD-0460-07

TERRY M. HOLMES, DAVID WOODALL, GABRIEL J. WILLIAMS,
GABRIEL CONTRERAS, JR., APRIL HARLOW, ALFONSO R. RODRIGUEZ,
MICHAEL BRICE, & WALTER WIDENER, JR.

v.

THE STATE OF TEXAS

On Discretionary Review of Cases 06-06-00105-CR, 06-06-106-CR,
06-06-107-CR, 06-06-108-CR, 06-06-109-CR, 06-06-110-CR,
06-06-111-CR, & 06-06-112-CR of the
Sixth Court of Appeals,
Harrison County

*WOMACK, J., delivered the opinion of the Court, in which MEYERS, PRICE, JOHNSON, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined. KELLER, P.J., concurred in the judgment.*

The appellant David Woodall was charged with driving while intoxicated.[1] The County Court at Law found him guilty. The Court of Appeals reversed the conviction and remanded the case.[2]

Relying on its decision in Woodall's case, the Court of Appeals reversed the judgments of conviction in seven other driving-while-intoxicated cases from the same trial court and remanded them for further proceedings.[3] We consolidated the eight cases and granted the State's petitions for discretionary review.

In the case of David Woodall, we shall reverse the Court of Appeals' judgment and affirm the judgment of the trial court. In the other seven cases we shall affirm the judgments of the Court of Appeals.

The distinction between Woodall's case and the others is the preservation of error for appeal.

*Woodall's Case*

Just before the jury trial of Woodall's case began, the State, relying on a ruling recently made by the same trial court in a case that is not before us,[4] made an oral request that the trial

---

[1] See PENAL CODE § 49.04.

[2] *See Woodall v. State*, 216 S.W.3d 530 (Tex. App.—Texarkana 2007).

[3] *Holmes v. State*, No. 06-06-105-CR; *Williams v. State*, No. 06-06-107-CR; *Contreras v. State*, No. 06-06-108-CR; *Harlow v. State*, No. 06-06-109-CR; *Rodriguez v. State*, No. 06-06-110-CR; *Brice v. State*, No. 06-06-111-CR; *Widener v. State*, No. 06-06-112-CR. All the opinions were delivered on March 9, 2007, and they were not designated for publication.

[4] *Barfield v. State*, No. 06-06-00090-CR, 2007 WL 188658, 2007 Tex. App. LEXIS 566 (Tex. App.—Texarkana Jan. 26, 2007) (not designated for publication).

court take judicial notice of the underlying science of the Intoxilyzer 5000 (a machine which tests samples of breath for alcohol content). Defense counsel objected, arguing:

> My cross-examination of an expert from the State of Texas in regard to the Intoxilyzer 5000 goes to testing the techniques and the principles and the application by the machine of the recognized breath testing science. And to deny me the right to go into question [*sic*] the techniques and the application done by the machine prevents the Defendant from presenting a defense. And it prevents us the right of due process of law because what the Court is doing with that kind of a ruling is creating something that the legislature has refused to do for the past 25 years and that is create a per se guilt issue on intoxication based upon breath testing.

In ruling on the motion in favor of the State, the trial court said:

> Well, I think admissibility is the ultimate test of reliability. And I have read cases in which it appears to me that the Courts have upheld and found that reliability of the techniques used by the Intoxilyzer 5000. The test for admissibility has long been a very simple test, which appears to me, among – also along with reading those other cases, that the Courts have long upheld the reliability of this particular machine.
>
> Now, absent some expert testimony that would indicate some problems with the machine – and we have tried many, many, many cases involving the Intoxilyzer 5000 and I have never heard not one shred of evidence from an expert witness that would indicate any problem with the machine – I'm going to grant your application just like I did in the other case.

Defense counsel sought clarification:

[DEFENSE COUNSEL]: Judge, so I know for sure, what you are ordering me is not to question the expert in regard to the principles of the Intoxilyzer and how it applies the rules of science in regard to attempting to apply the science of breath testing. In essence, I always have a question about the lack of the – or the ability of the machine to correlate the temperature. I have a –

[TRIAL COURT]: What temperature?

[DEFENSE COUNSEL]: The temperature of the breath sample.

[TRIAL COURT]: All right.

[DEFENSE COUNSEL]: You are saying that I can't go into that?

[TRIAL COURT]: That's right.

[DEFENSE COUNSEL]: I always question as to the way the tube is heated, the way the breath is heated and there being no correlation to that. I can't go into that?

[TRIAL COURT]: That's correct.

[DEFENSE COUNSEL]: I've always contested the temperature in the simulator and the law, Henry's Law, as it applies to the simulator. I can't go into that?

[TRIAL COURT]: Only if there is some indication that there is something wrong – if the test before and after the admissibility test show there is something wrong with the machine. But you are right.

[DEFENSE COUNSEL]: Okay.

[TRIAL COURT]: If the evidence is that they tested it before the test in question and tested it after the test in question and it was working both times and the evidence is that it was working that day, you are correct.

[DEFENSE COUNSEL]: So if they present an expert, in his opinion, that says that the machine has valid operation to apply to principles of breath testing, I cannot question that expert in the principles and application of the breath testing science. Is that what the Court is saying?

[TRIAL COURT]: That is correct.

Defense counsel again objected to the court's ruling, and his objection again was overruled. Defense counsel then asked for a running objection and stated that he needed to perfect a bill. The judge suggested he do so by making a statement into the record of what he would prove. Defense counsel replied that he would be glad to do it later.

But he never did.

In the trial before the jury, the State introduced evidence of the arresting officer's testimony that he pulled Woodall's vehicle over after seeing it weave and swerve, that he smelled alcohol on Woodall's breath, and that Woodall had red and watery eyes. The officer also testified that he conducted various field-sobriety tests at the scene and again at the jail, and that Woodall performed poorly in those tests. The State then played videotapes of the sobriety tests for the

jury. Finally, the officer described the procedure involved in operating the Intoxilyzer 5000 and stated that Woodall had submitted to a breath test. But when the State offered a copy of the report which contained the results of the tests, the trial court sustained Woodall's objection that the State had failed to lay a proper predicate. The officer never testified to the results, and the trial court never admitted them into evidence.

After the arresting officer's testimony and a recess for lunch, the defense counsel said, "I would like to also – and I'll keep it short – make a proffer in regards to what questions I would have asked if permitted to do so."

The Court said, "We've been talking about a potential resolution of the case." A trial without a jury began.

The defense counsel moved "for permission to cross-examine any expert called on behalf of the State of Texas concerning the reliability of the Intoxilyzer 5000. And more in particular into the techniques and application of the techniques and principles of breath testing applied by the Intoxilyzer 5000."

The Court overruled and denied the motion.

The appellant Woodall withdrew his plea of not guilty and pleaded no contest pursuant to a plea agreement. After the trial court found him guilty, the appellant Woodall appealed the denial of his oral motion for cross-examination.

*The Other Cases*

Each of the other seven appellants' cases came to court after Woodall's trial. Each appellant was charged with driving while intoxicated. Before trial, each appellant filed a motion

to cross-examine the State's expert on the operation of the Intoxilyzer 5000. Included in each motion was a list of eight "areas of concern about the internal workings of the Intoxilyzer 5000:

"1.  The simulator, which the state presents as proof that the machine is working properly on the date in question, is based on Henry's Law. It requires that the simulator is maintained at a constant temperature, in a closed container, and at a constant pressure. It simulates a person which is offered to give a sample of their breath [*sic*]. The human body is not a closed container which prevents a constant pressure and the temperature of the breath is unknown to the machine.

"2.  The partition ratio between the gas above the fluid and the substance in the fluid is incorrect as it relates to the partition ratio assumed by the machine to be the that [*sic*] of the subject.

"3.  The machine heats certain parts that are used to produce a result including the collection chamber to between 115 deg. To [*sic*] 145 deg. which effects [*sic*] the breath sample by producing a false high.

"4.  The temperature of the human breath is unknown to the machine and has no way [*sic*] of measuring the same in order to give an accurate result. If the temperature of the breath is above 34 deg. The [*sic*] results will be a false high.

"5.  A rise of three (3) deg. C will increase the results by a false high of .02. A body temperature of 37 deg. C is 98.6 deg. F. which is normal body temperature.

"6.  The Intoxilyzer is not specific to Ethel [*sic*] alcohol and that others substances [*sic*] will indicate a false high in the results.

"7.  The Intoxilyzer has a slop or tolerance or error factor of .02.

"8.  That if the temperature of the simulator is unknown to the operator he would not be able to predict the simulator results."

The trial court denied each motion.

Each appellant entered a no-contest plea without a trial, and no evidence was heard in the seven cases. The trial court found each of the seven appellants guilty.

*The Appeals*

On appeal, Woodall and the seven other appellants argued that the trial court erred in denying their motions to cross-examine the State's breath-test expert about the operation of the Intoxilyzer 5000.[5] The Court of Appeals held that the appellants had preserved the error for

---

[5] *See Woodall*, 216 S.W.3d, at 531-33.

review, that complete denial of the right to cross-examine was error, that the right to present a defense is a fundamental element of due process of law, and that a violation of that right amounts to constitutional error.[6] The Court also concluded that it could not determine beyond a reasonable doubt that the errors did not contribute to the convictions, pursuant to Rule of Appellate Procedure 44.2(a).[7]

The State petitioned for, and we granted, discretionary review of three issues. Two of them concerned preservation of error: Must the appellate record demonstrate the substance of the testimony that the breath-test expert would have given? Must the appellate record show the results of the Intoxilyzer tests?

The third issue had to do with harm: Was Rule of Appellate Procedure 44.2(a)'s harmless-error standard for constitutional error the correct standard?

*Preservation of Error*

Rule of Evidence 103(a)(2) limits the scope of issues which may be appealed when evidence is limited or excluded. "Error may not be predicated upon a ruling which … excludes evidence unless a substantial right of the party is affected, and … the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked."[8] The offer of proof may be in question-and-answer form or in the form of a concise statement by counsel.[9] "An offer of proof to be accomplished by counsel's concise statement

---

[6] *Id.*, at 534-37.

[7] *Id.*, at 537.

[8] R. EVID. 103(a)(2).

[9] R. EVID. 103(b); *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Cr. App. 1998).

must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible."[10] The primary purpose of the offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful.[11] A secondary purpose is to permit the trial judge to reconsider his ruling in light of the actual evidence.[12]

This court has recognized a distinction between the general rule in Rule 103(a)(2) and the case in which the defendant is not permitted to question a State's witness about matters that might affect the witness's credibility.[13]

In the latter case, "the defendant need not show what his cross-examination of the witness would have affirmatively established; he must merely establish what general subject matter he desired to examine the witness about during his cross-examination and, if challenged, show on the record why such should be admitted into evidence."[14] In such a case the trial court's ruling has prevented a defendant from questioning a State's witness about subject matters which affect the witness's credibility, that is, matters which might show malice, ill feeling, ill will, bias, prejudice, or animus.[15]

---

[10] *Warner*, 969 S.W.2d, at 2.

[11] MCCORMICK ON EVIDENCE § 51 (4th ed. 1992). *Accord*, STEVEN GOODE *et al.*, 1 TEXAS PRACTICE – GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 103.3 (1993).

[12] *Ibid.*

[13] *Virts v. State*, 739 S.W.2d 25, 29 (Tex. Cr. App. 1987).

[14] *Ibid.*

[15] *Ibid.*

The distinction between these kinds of cases may have been blurred by the similarity of language in two expressions: "the credibility of a witness's testimony" and "a witness's credibility." The former expression refers to the substance of the evidence; the latter refers to personal characteristics of the witness.

The blurring perhaps began when we paraphrased language from one decision ("certain subject matters that might [show] malice, ill feeling, ill will, bias, prejudice, or animus")[16] in *Virts v. State* as "certain general subject[s] that might affect the witness's credibility."[17] The *Virts* opinion, despite its initial short-hand, went on to state what we meant by "certain general subject[s] that might affect the witness's credibility," namely, those subjects that might "reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness's credibility."[18]

Taken out of context, however, the phrase left open the door to more confusion, which occurred in this court when Judge Teague, in citing *Virts* in a dissenting opinion, substituted "credibility of the witness's testimony" for "witness's credibility."[19]

We hope in this case to return to the correct statement of the distinction between Rule 103(a)(2)'s requirement for preservation of error and the narrow exception for subject matters which affect the witness's credibility – that is, matters which might show malice, ill feeling, ill will, bias, prejudice, or animus.

---

[16] *Koehler*, 679 S.W.2d, at 9.

[17] *Virts*, 739 S.W.2d, at 29. *Cf. Koehler*, 679 S.W.2d, at 9 ("any question asked of a witness on cross-examination, *which might have a tendency to affect the witness' credibility*, is always a proper question") (emphasis in original).

[18] *Virts*, 739 S.W.2d, at 29.

[19] *Wilford v. State*, 739 S.W.2d 854, 866 (Tex. Cr. App 1987) (Teague, J., dissenting).

The Court of Appeals said in this case, "Under many circumstances, the statements by counsel might not be sufficient to adequately inform the trial court about the substance of the evidence he wanted to offer. However, in this instance, it is apparent that counsel and the court both understood the broad picture of the questions counsel sought to propound and the line of questioning upon which his arguments were based."[20] Citing *Virts*, the Court of Appeals declared, "When a trial court excludes evidence designed to call into question *the credibility of a witness's testimony*, the defendant has less rigid requirements to preserve error for appeal."[21] We disagree with this statement of law, and we disagree that the facts of this case fall within the exception.

The essence of *Virts* is that "the right of cross-examination by the accused of a testifying State's witness includes the right to impeach the witness with relevant evidence that might reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness's credibility."[22] There, the trial judge prevented the defendant from cross-examining a State's witness regarding the witness's mental health.[23] On appeal, this court found that, based on a sufficiently established

---

[20] *Woodall*, 216 S.W.3d, at 535.

[21] *Id.*, at 535 (emphasis added) (citing *Virts*, 739 S.W.2d, at 29; *Koehler*, 679 S.W.2d, at 9).

[22] *Virts*, 739 S.W.2d, at 29. *See Koehler*, 679 S.W.2d, at 9. *See also Harris v. State*, 642 S.W.2d 471, 479-80 (Tex. Cr. App. 1982) (trial court's refusal to allow effective cross-examination of a State's witness to establish her bias or motive in testifying against the defendant violated the defendant's right to confrontation).

[23] *Virts*, 739 S.W.2d, at 28.

record, the witness's mental illness was relevant to her credibility, and that the trial court erred in excluding it as evidence.[24]

Virts dealt specifically with evidence affecting the witness's credibility (that is, relevant evidence used to impeach the witness); it did not deal with evidence affecting the substance of a witness's testimony. Applying Virts, however, the Court of Appeals reasoned in this case: "Clearly, questions [to the State's expert] about the claimed shortfall in the machine's capabilities … could have impaired the [State's expert's] credibility and would have been directed at raising doubts that the results about which he was testifying were accurate."[25] We disagree.

While there might be little distinction between a witness's credibility and the substance of the witness's testimony in some cases, we find no such showing here. To the contrary, we find a clear distinction, because any shortfall in the machine's capabilities would raise doubts about the substance of the witness's testimony, but not about the witness's credibility. Even if evidence were presented that cast doubt on the Intoxilyzer 5000, this would not necessarily mean that the State's expert had bias or prejudice, for example, in testifying against the appellant Woodall. Surely all cross-examination, to some extent, is directed at "raising doubts" for the trier of fact about the witness's direct testimony. But to equate the two would allow the exception to swallow Rule 103(a)(2) entirely.

The Court of Appeals' broad interpretation of the exception from Virts does not accurately reflect this court's intent in promulgating Rule 103(a)(2) or in deciding Virts and the line of cases that came before it, and we decline to stray from our narrow intent today. Instead, we

---

[24] Id., at 28-30.

[25] Woodall, 216 S.W.3d, at 535.

offer this clarification of the exception: where the defendant, in cross-examining a State's witness, desires to elicit subject matters that tend to impeach the witness's character for truthfulness – for example, to show malice, ill-feeling, ill-will, bias, prejudice, or animus on the part of the witness toward the defendant – in order to preserve the issue for appellate review, he is not required to show that his cross-examination would have affirmatively established the facts sought, but merely that he desired to examine the witness with regard to those specific subject matters that tend to impeach the witness during his cross-examination.

Although Woodall showed an intent to call into question the underlying science of the Intoxilyzer 5000, this intent does not amount to an intent to impeach the witness's truthfulness, as opposed to the substance of the witness's testimony. Because the appellant Woodall failed to "merely establish" that the "general subject matter" of his proffered evidence would be used to impeach the expert, and not the substance of the expert's testimony, his case is controlled by the requirements of Rule of Evidence103(a)(2) rather than the exception for impeachment of a witness's credibility. Woodall failed to preserve his complaint for review by making a record of the substance of the evidence he wished to present as Rule 103(a)(2) required.

The only indications we have from the record regarding the substance of the evidence that Woodall wished to offer are three statements he made to the trial judge during his objection to the State's oral motion: (1) "the ability of the machine to correlate the temperature"; (2) "the way the tube is heated, the way the breath is heated and there being no correlation to that"; and (3) "the temperature in the simulator and the law, Henry's Law, as it applies to the simulator." Even if we assume that these statements from defense counsel are adequate to inform this court of the questions he wished to pose to the State's expert witness, we have no indication from the record

as to what the State's expert's answers might have been. In fact, the only indication we do see in the record is from the trial judge, who stated, "I have never heard not one shred of evidence from an expert witness that would indicate any problem with the machine." Unlike Virts, who showed from the record an intent to impeach the witness based on the witness's history of mental illness, the appellant Woodall has made no showing in the record of an intent to impeach the State's expert's credibility, nor do we have any indication that this was even his intent. His only intent, as we see it, was to call into question the underlying science of the Intoxilyzer 5000. This, however, would merely call into question the substance of the expert's testimony, not the expert's credibility.

What the record does suggest to us is that, after many trials, the trial court and the attorneys in this case were familiar with defense counsel's usual questions and the usual answers that the State's expert witness had given in other trials regarding the Intoxilyer 5000.[26] This court, however, is not privy to such information. Here we must have what Rule 103(a)(2) requires: a record that shows the excluded evidence so that we can judge its admissibility and determine whether the trial court abused its discretion by excluding it.

When the defense attorney failed to "perfect a bill" or to make a statement of what he would prove, as he told the trial court he would do, he failed to satisfy Rule 103(a)(2). Counsel's statements are not a reasonably specific summary of the evidence offered. Because the substance of the evidence has not been made known to us from the record, and because the substance of the evidence is not apparent to us from the record, the appellant Woodall has failed to comply with

---

[26] *See Woodall*, 216 S.W.3d, at 534 ("The trial court's response was based, in large part, on earlier cases and arguments raised by the same counsel, and on the large number of other cases [the trial judge] had heard involving intoxilyzers.").

Rule 103(a)(2). Thus, we are unable to judge the admissibility of the excluded evidence or determine whether the trial court abused its discretion by excluding it. We find that the error has not been adequately preserved for this or any appellate court.

We reverse the ruling of the Court of Appeals in the *Woodall* case and affirm the judgment of the trial court.

Because the record in each of the seven companion cases contains a showing, in the form of a written motion and included proffer for purposes of Rule 103(a)(2), which is different from that in the appellant Woodall's case, we affirm the judgments of the Court of Appeals in those cases.

Delivered April 29, 2009.
Publish.