David WOODALL, Appellant

v.

The STATE of Texas, Appellee.

No. 06–06–00106–CR.

Court of Appeals of Texas, Texarkana.

Submitted Jan. 31, 2007.

Decided Feb. 22, 2007.

Vernard G. Solomon, Marshall, for appellant.

Joe Black, District Attorney, Al Davis, Asst. Dist. Atty., Marshall, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice MOSELEY.

David Woodall entered into a trial before a jury for driving while intoxicated, but after several witnesses had testified, he changed his plea to no contest. Woodall sets out two points of error, but we conclude that there is but one. In his appellate brief, the first point complains that the reliability of the Intoxilyzer 5000 should have been the subject of cross-examination; the second point contends that the denial of the right to cross-examine the State's Intoxilyzer expert was error. After reviewing his arguments, we conclude that Woodall's contention is that the trial court improperly denied his motion to cross-examine any expert called on behalf of the State "concerning the working or the reliability of the Intoxilyzer 5000."

The context of that order is this: before the trial began, the State asked the trial court to take judicial notice of the underlying science which supports the Intoxilyzer breath-testing machine, but to leave open for cross-examination only the testing done pertaining to the tests made relating to this offense. Defense counsel objected at length, but the court ultimately ruled in favor of the State.

As the trial progressed, the Intoxilyzer results were not introduced into evidence or otherwise presented to the jury. After

Trooper Dennis Redden (the arresting officer) testified, the State and Woodall entered into a plea agreement under which Woodall entered a no-contest plea and was found guilty. This appeal ensued.

Rule 25.2(a)(2) of the Texas Rules of Appellate Procedure specifically allows for an appeal from a guilty plea pursuant to a plea agreement on "(A) those matters that were raised by written motion filed and ruled on before trial, or (B) after getting the trial court's permission to appeal." TEX.R.APP. P. 25.2(a)(2). The trial court stated that the motion was presented before trial began, and ruled on at that time; it was explicitly understood that the court was doing so with an eye to ensuring that Woodall could later raise the issue on appeal.

■ The initial question for this Court is to determine precisely the issue(s) raised in this appeal.[1]

This case, however, differs from *Barfield* in the evidence presented and the procedural posture of the case. This trial did not go to the jury as the *Barfield* case did; the evidence was, therefore, not completed. Woodall, unlike Barfield, pleaded no contest and was found guilty, and the State never introduced the results of the Intoxilyzer test for the jury's consideration; as a consequence, there was no expert witness to be cross-examined regarding the breath-testing machine.

We first look to see what issue was actually raised in Woodall's brief. The appellate brief is structured as two stated points of error, but Woodall substantively makes but one. His first point complains that the validity of the Intoxilyzer 5000 should have been subject to cross-examination; his second point contends that denying him the right to cross-examine the State's Intoxilyzer expert was error. After reviewing the substance of his arguments and the record on which they are based, we will address what we perceive as Woodall's real contention, the one actually developed and briefed (and as applied to this procedural situation): that the trial court improperly limited Woodall's potential cross-examination of any breath-testing expert that may have been called by the State.

In his appellate brief, as he begins to argue his point of error number one, Woodall posits that the results of Intoxilyzer testing are admissible only if they meet a three-pronged test of reliability under the *Kelly*[2] scientific evidence analysis. However, he does not develop any complaint about the admissibility of Intoxilyzer test results. His principal discussion under point one addresses alleged deficiencies of the breath-testing machine, including the permitted tolerances and a lack of temperature control. The real focus under that point is that he avers that the trial court erred by issuing a pretrial order denying his request to attack the manner in which the machine applies the scientific principles behind breath testing to determine blood-alcohol content.

---

1. The brief in this case, after setting out a different statement of the case to reflect the factual and procedural position of this action, provides argument that is (with the exception of one phrase) identical to the brief presented by counsel in *Barfield v. State*, No. 06–06–00090–CR, 2007 WL 188658, 2007 Tex.App. LEXIS 566 (Tex.App.-Texarkana Jan. 26, 2007, no pet. h.), filed with this Court at approximately the same time as this appeal.

2. *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim.App.1992) (To be considered reliable, evidence based on a scientific theory must satisfy three criteria: (a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question.).

As he begins his argument of what he calls point of error number two, Woodall argues that an Intoxilyzer result is not automatic proof of guilt. He also accuses the trial court of erroneously overruling Woodall's objections without a specification of exactly what objections were overruled and complains that this would result in wrongly misleading a jury concerning the method it should use in evaluating the evidence. He additionally seems to complain that the trial court would, thereby, have the effect of instructing the jury to find guilt based on the Intoxilyzer results. However, he specifies no jury instruction that was allegedly erroneous (and in this case, since it did not go to the jury, there could have been none), and it appears that his argument in that regard is also suggesting that the trial court's decision would have had the effect of misleading a jury to believe that it was required to accept any Intoxilyzer results as correct and conclusive. There is no complaint about the trial court's announced decision to take judicial notice, though it is not precisely clear which matter was the subject of that judicial notice.

We read his argument to assert one error: that the trial court erred in entering the order barring Woodall from conducting any cross-examination of the State's breath-testing expert on the stated issues.[3]

Woodall's argument is based upon his position that the way in which the breath tests are obtained and the means by which the machine's results are calculated are open to attack by cross-examination. He acknowledges that the underlying theory (i.e., the scientific principle) of breath-testing analysis to determine blood-alcohol levels is sound and further concurs that, upon proof that the machine was operating properly, the results are admissible.[4] Woodall argues, however, that the trial court could not properly foreclose all cross-examination of the State's expert on the question of whether those principles were applied correctly by the machine (even if the machine is properly operated).[5]

In this case, however, the trial court ruled that no such examination on this point would be allowed; Woodall ultimately pleaded nolo contendere. Thus, there is no issue concerning cure of any error in limiting scope of or the length of cross-examination [6] because the court ordered that there would be absolutely none of this type.

We first acknowledge that, although he uses the phrase "cross-examination" in his argument, Woodall neither cited to the Sixth Amendment nor its Texas constitu-

---

3. This Court has repeatedly warned litigants not to combine multiple issues into a single point of error, thereby risking our overruling the composite point of error as multifarious. *See, e.g., Dickey v. State,* 189 S.W.3d 339, 341 (Tex.App.-Texarkana 2006, no pet.); *Newby v. State,* 169 S.W.3d 413, 414 (Tex.App.-Texarkana 2005, no pet.); *Harris v. State,* 133 S.W.3d 760, 764 n. 3 (Tex.App.-Texarkana 2004, pet. ref'd); *Parra v. State,* 935 S.W.2d 862, 875 (Tex.App.-Texarkana 1996, pet. ref'd).

4. *See Stevenson v. State,* 895 S.W.2d 694, 696 (Tex.Crim.App.1995); *Scherl v. State,* 7 S.W.3d 650, 653 (Tex.App.-Texarkana 1999, pet. ref'd).

5. In *Barfield,* it was unnecessary to address this issue because counsel was permitted to engage in extensive cross-examination of the expert.

6. We review the trial court's decision to limit a defendant's cross-examination for abuse of discretion. *See Love v. State,* 861 S.W.2d 899, 903 (Tex.Crim.App.1993); *Lopez v. State,* 200 S.W.3d 246, 256 (Tex.App.-Houston [14th Dist.] 2006, pet. ref'd); *Stults v. State,* 23 S.W.3d 198, 204 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd).

tional counterpart; he made no attempt to apply cases involving the application of constitutional analysis to the alleged denial of the right to cross-examination.

It is not sufficient that an appellant globally cite the "Sixth Amendment" and nothing else in support of his request for reversal. *See Vuong v. State,* 830 S.W.2d 929, 940 (Tex.Crim.App.1992). It is incumbent upon counsel to cite specific legal authority and to provide legal argument based on that authority. TEX.R.APP. P. 38.1(h); *Vuong,* 830 S.W.2d at 940; *Ex parte Granger,* 850 S.W.2d 513, 515 n. 6 (Tex.Crim.App.1993). Where adequate briefing is not provided, the contention will be overruled. *Rhoades v. State,* 934 S.W.2d 113, 119 (Tex.Crim.App.1996).

Woodall's argument, however, is not based directly upon the Sixth Amendment; rather, it is a claim that entirely denying that Sixth Amendment right to cross-examination deprived him of the right to present a defense (the argument that the intoxilyzer was functionally inaccurate), which would necessarily have to be developed through the process of questioning the expert.

We first look to see if his claim was adequately preserved for review. Counsel clearly stated during discussion with the trial court that this was his legal argument to justify allowing the examination. The remaining question is whether he adequately informed the court about the nature of the information he wanted to elicit through that examination.

In this case, the record contains general references by counsel to the matters about which he wanted to question the State's expert. The State argues that the complaint is not preserved because counsel did not adequately show what evidence he wished to obtain. TEX.R. EVID. 103(a)(2) states that "Error may not be predicated

upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked." *See Warner v. State,* 969 S.W.2d 1, 2 (Tex. Crim.App.1998); *Greenwood v. State,* 948 S.W.2d 542, 549 (Tex.App.-Fort Worth 1997, no pet.).

Counsel presented argument about the proposed ruling for several pages in the record, and it is apparent that his complaint was that it was unfair to completely prevent him from questioning the State's expert about the operation of the machine, thus preventing him from attempting to show that it did not work reliably; this was intended to bolster his contention that the machine did not adequately control or correlate the actual (as opposed to presumed) temperature of the breath of the person in calculating his breath-alcohol content. The trial court's response was based, in large part, on earlier cases and arguments raised by the same counsel, and on the large number of other cases he had heard involving intoxilyzers. The court stated that

Well, I think admissibility is the ultimate test of reliability. And I have read cases in which it appears to me that the Courts have upheld and found that reliability of the techniques used by the Intoxilyzer 5000. The test for admissibility has long been a very simple test, which appears to me, among-also along with reading those other cases, that the Courts have long upheld the reliability of this particular machine.

Now, absent some expert testimony that would indicate some problems with the machine—and we have tried many, many, many, many cases involving the Intoxilyzer 5000 and I have never heard not one shred of evidence from an ex-

pert witness that would indicate any problem with the machine—I'm going to grant your application [State's] just like I did in the other case.

Under many circumstances, the statements by counsel might not be sufficient to adequately inform the trial court about the substance of the evidence he wanted to offer. However, in this instance, it is apparent that counsel and the court both understood the broad picture of the questions counsel sought to propound and the line of questioning upon which his arguments were based.

■ To preserve error when the issue before the appellate court is whether appellant's counsel was denied the opportunity to question the testifying State's witness in the presence of the jury generally about what might have affected his credibility, the defendant need not have shown what his cross-examination would have affirmatively established; such defendant must merely have established what general subject matter about which he desired to examine the witness during the cross-examination and, if challenged, show on the record why such testimony should be admitted into evidence. *Virts v. State*, 739 S.W.2d 25, 29 (Tex.Crim.App.1987); *Harris v. State*, 642 S.W.2d 471, 479–80 (Tex.Crim.App.1982); *Mumphrey v. State*, 155 S.W.3d 651, 662 (Tex.App.-Texarkana 2005, pet. ref'd).

When a trial court excludes evidence designed to call into question the credibility of a witness's testimony, the defendant has less rigid requirements to preserve error for appeal. *Virts*, 739 S.W.2d at 29; *Koehler v. State*, 679 S.W.2d 6, 9 (Tex.Crim.App.1984). In this case, the expert would have testified about the results of the breath-alcohol test provided by the machine. Clearly, questions about the claimed shortfall in the machine's capabilities (if these questions were accurately raised) could have impaired the witness's credibility and would have been directed at raising doubts that the results about which he was testifying were accurate. In other words, Woodall was not challenging the admissibility of the test results; rather, he sought to cross-examine the expert witness to raise doubts about the accuracy of the machine itself and, therefore, the weight the jurors should attribute to the results of the test it performed.

Counsel did what was required. Thus, we conclude that the contentions now raised were adequately preserved for our review.

■ We now turn to the question of whether the trial court erred by refusing to allow any cross-examination on this topic. We review a trial court's ruling to admit or exclude evidence under an abuse of discretion standard. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex.Crim.App.1996) (op. on reh'g); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g). If the court's decision falls outside the "zone of reasonable disagreement," it has abused its discretion. *Rankin*, 974 S.W.2d at 718; *Montgomery*, 810 S.W.2d at 391.

The State's response at trial to Woodall's argument is that the court did not need to "reinvent the wheel" in this case.[7] The State focuses on the aspects of breath testing that are unquestionably approved, and then suggests that without some indi-

---

**7.** The statement at trial was, "Your Honor, we ask that he can question our experts and our cops on, of course, what was actually done, but not on whether the Intoxilyzer 5000 is a machine that works or not. It's been used in this State for awhile, a long time in other States, and this goes back to that same argument that all of the case law holds that trial courts don't have to re-invent the wheel at every single trial."

cation that evidence would be elicited from the cross-examination to show unreliability, the trial court was within its discretion to disallow any questioning about the machine's operation and its ability to provide accurate results.

We acknowledge that there is some language in opinions (including one from this Court) to the effect that the Legislature has "already spoken as to the reliability of intoxilyzer test results." *Scherl*, 7 S.W.3d at 653 n. 5. Although within the vernacular, that language is not precisely accurate. The Legislature has actually determined that breath-test results are *admissible* when performed as required by the Texas Transportation Code;[8] applicable regulations describe the types of machines that may be used for that purpose and specify the procedures to be utilized by the operators in performing the tests. The opinions referencing a particular machine use language beyond that contained within the statute; the use of the brand name "Intoxilyzer" as generally applied in reported cases is used generically, much as the word "Kleenex" is often used to describe facial tissues.[9]

The statute provides that the Legislature found the type of scientific tests, when performed with proper procedures on an approved machine, are sufficiently reliable to be admissible as evidence. The statute, however, does not provide that the tests are conclusive or that the efficacy of a particular machine to properly analyze the breath for blood-alcohol content is unassailable. The mere fact that it has not yet been attacked effectively in a reported case in Texas does not mean that it is of such undeniable reliability that counsel should not be able to cross-examine a State's witness to attempt to search out and expose the weaknesses (if any actually exist) which the machine may possess.[10]

Despite the portion of the briefing in which counsel argues to the contrary, a gatekeeper hearing is not involved in this instance. We reiterate: the scientific principles involved have been found valid. The results of testing properly done on a breath-test machine have been statutorily found to be admissible. Neither situation describes the argument before us.

■ The right to present a defense by confronting the State's witnesses for the purpose of challenging their testimony is a fundamental element of due process of law. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *see Williams v. State*, 116 S.W.3d 788, 791 (Tex.Crim.App.2003).

In this case, by pretrial ruling the trial court ordered that no cross-examination be made on the general topic of the possible fallibility of the Intoxilyzer machine. Rule 611(b) of the Texas Rules of Evidence provides that:

**Scope of Cross Examination.** A witness may be cross-examined on any matter relevant to any issue in the case, including credibility.

Tex.R. Evid. 611(b).

■ The allowed scope of cross-examination is broad and wide-ranging and ex-

---

**8.** Tex. Transp. Code Ann. § 724.064 (Vernon 1999).

**9.** Likewise, in one circumstance, the Texas Administrative Code uses the term "intoxilyzer" generically. 1 Tex. Admin. Code § 159.15(d) (2007).

**10.** We recognize that the state-designed regulations themselves are written in such a way as to prevent anyone other than law enforcement personnel from testing or using the machines and then only for the purpose of actually putting them to testing use or for training of others to put them to use; those who violate those rules risk losing their certification for use of the machine. *See* 37 Tex. Admin. Code § 19.4(b), (c)(8) (2006).

tends to any matter relevant to the issues. *Russell Stover Candies, Inc. v. Elmore,* 58 S.W.3d 154, 157 (Tex.App.-Amarillo 2001, pet. denied); *Hogue v. Kroger Store No. 107,* 875 S.W.2d 477, 480 (Tex.App.-Houston [1st Dist.] 1994, writ denied).

The accuracy and reliability of the machine is clearly a matter relevant to an issue in the case. Several of the ways in which the results generated may be attacked have been eliminated by caselaw or by legislative fiat. However, this particular mode of attack has not.[11]

 Because the right to present a defense is a fundamental element of due process of law, and because a violation of that right constitutes constitutional error, we must reverse a trial court's judgment when such an error is present unless we can determine beyond a reasonable doubt that the error did not contribute to the conviction. *See* Tex.R.App. P. 44.2(a) (requiring reversal of constitutional error unless appellate court determines beyond a reasonable doubt that the error did not contribute to the conviction); *see also Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (holding that denial of effective cross-examination is "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it").

Woodall entered his nolo contendere plea after the trial court denied his pretrial motions to permit cross-examination of the State's expert as to the efficacy of the breath-testing machine. Consequently, the record before us does not include a full trial. Because Woodall withdrew his not guilty plea following the trial court's pretrial ruling on his motion and obtained permission to appeal that ruling, on the record before us we cannot determine beyond a reasonable doubt that the trial court's erroneous ruling on Woodall's pretrial motion to exclude did not contribute to his nolo contendere plea, that is, his conviction. *See Hale v. State,* 139 S.W.3d 418, 420 (Tex.App.–Fort Worth 2004, no pet.).

Accordingly, we sustain Woodall's contention of error.

We reverse the judgment and remand the case to the trial court for further proceedings.

---

11. *See generally Hernandez v. State,* 116 S.W.3d 26, 38 (Tex.Crim.App.2003) (Keller, P.J., concurring) (The concurrence discusses a situation where reliability of a machine testing for drugs in urine has not been judicially noticed as reliable and where any reliability is not a matter of common knowledge. The concurrence contains an extensive, multijurisdictional discussion about the difficulties of determining the reliability of a device. In that concurrence, it is noted that the device had been in use for years, a fact which was, perhaps, some evidence of reliability.).