ACCEPTED
04-15-00208-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
8/17/2015 8:26:10 PM
KEITH HOTTLE
CLERK

**NOS. 04-15-00207-CR, 04-15-00208**

---

**IN THE COURT OF APPEALS
FOURTH SUPREME JUDICIAL DISTRICT
SAN ANTONIO, TEXAS**

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

08/17/15 8:26:10 PM

KEITH E. HOTTLE
Clerk

---

**JESSICA G. CASTILLO**
*Appellant*

**V.**

**THE STATE OF TEXAS,**
*Appellee*

---

**TRIAL COURT CAUSE NOS. 458109, 458110
IN THE COUNTY CRIMINAL COURT AT LAW NO. 4
OF BEXAR COUNTY, TEXAS**

---

**BRIEF FOR APPELLANT**

---

Daniel De La Garza
Texas Bar No. 24077965
The Law Office of Daniel De La Garza, PLLC
1800 McCullough Ave.
San Antonio, Texas 78212
(210) 263-1146 office
(210) 855-6274 fax
Daniel.DeLaGarza@me.com

Daniel Mehler
Texas Bar No. 24085752
Law Office of Daniel Mehler
115 E. Travis Street, Suite 1500
San Antonio, Texas 78205
(210) 816-0529
(210) 519-2856

**APPELLANT REQUESTS ORAL ARGUMENT**

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Tex. R. App. P. 39.7, Appellant requests oral argument in this case as it would significantly aid the Court in the decisional process.

## IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| Appellant: | Jessica Castillo<br>4000 Horizon Hill Blvd. #1803<br>San Antonio, Texas 78229 |
| Presiding Judge: | Hon. Jason Garrahan<br>Presiding Judge<br>Bexar County Criminal Court at Law No. 4<br>300 Dolorosa<br>San Antonio, Texas 78205 |
| Trial Prosecutor: | Joseph Hooker<br>Rebecca Gorham<br>Assistant District Attorneys<br>Bexar County District Attorney's Office<br>300 Dolorosa<br>San Antonio, Texas 78205 |
| Defense Counsel: | Daniel Mehler<br>Blakely Mohr<br>Attorneys at Law<br>115 E. Travis Street, Suite 1500<br>San Antonio, Texas 78205 |
| State's Appellate Counsel: | Hon. Nicholas LaHood<br>Bexar County District Attorney<br>101 W. Nueva, 4th Floor<br>San Antonio, Texas 78205 |
| Appellant's Counsel: | Daniel De La Garza<br>Attorney at Law<br>1800 McCullough Ave.<br>San Antonio, Texas 78212 |

Daniel Mehler
Attorney at Law
115 E. Travis Street, Suite 1500
San Antonio, Texas 78205

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT..........................................2

IDENTITY OF PARTIES AND COUNSEL........................................2

TABLE OF CONTENTS...........................................................4

INDEX OF AUTHORITIES.......................................................5

PRELIMINARY STATEMENT....................................................8

STATEMENT OF FACTS........................................................10

POINT OF ERROR ONE........................................................23

**APPELLANT WAS DENIED THE DUE PROCESS RIGHT TO PRESENT A DEFENSE**

POINT OF ERROR TWO........................................................23

**THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION FOR CONTINUANCE**

POINT OF ERROR THREE......................................................23

**THE TRIAL COURT'S ERRORS HAD A CUMULATIVE EFFECT**

POINT OF ERROR FOUR.......................................................34

**THE APOLOGY LETTER ORDERED AS A CONDITION OF COMMUNITY SUPERVISION IN CAUSE NO. 458109 VIOLATES APPELLANT'S CONSTITUTIONAL RIGHT AGAINST SELF-INCRIMINATION**

PRAYER FOR RELIEF...........................................................36

CERTIFICATE OF SERVICE.....................................................37

CERTIFICATE OF COMPLIANCE...............................................38

# INDEX OF AUTHORITIES

**CASES**                                                                   **PAGE**

*Carroll v. State*, 916 S.W.2d 494 (Tex. Crim. App. 1996)...............................24

*Chamberlain v. State*, 998 S.W.2d 230 (Tex. Crim. App. 1999).........................33

*Coleman v. State,* 966 S.W.2d 525 (Tex. Crim. App. 1998)..............................24

*Comm. v. Melvin*, 2013 PA Super 288, 2013 WL 6096222 (2013).......................35

*Crane v. Kentucky*, 476 U.S. 683 (1986)...............................................23, 25

*Davis v. Alaska*, 415 U.S. 308 (1974)....................................................29

*Deaton v. State*, 948 S.W.2d 371 (Tex. App.—Beaumont 1977, no pet.)............31

*Estrada v. State*, 313 S.W.3d 274 (Tex. Crim. App. 2010)................................33

*Gallo v. State*, 239 S.W.3d 757 (Tex. Crim. App. 2007)....................................31

*Gonzalez v. State*, 04-07-00804-CR, 2008 WL 5083125 (Tex. App.—San Antonio Dec. 3, 2008, pet. ref'd) (mem. op.) (not designated for publication).................31

*Heiselbetz v. State*, 906 S.W.2d 500 (Tex. Crim. App. 1995).............................31

*Henley v. State*, 454 S.W.3d 106 (Tex. App.—Fort Worth 2014, pet. granted)..............................................................................................25, 29

*Holmes v. S. Carolina*, 547 U.S. 319 (2006)..................................................23, 25

*Holmes v. State*, 323 S.W.3d 163, 174 (Tex. Crim. App. 2009)..............25, 26, 27

*Hurd v. State*, 725 S.W.2d 249 (Tex. Cr. App. 1987).......................................24

*Janecka v. State*, 937 S.W.2d 456 (Tex. Crim. App. 1996)...............................31

*Lewis v. State*, 815 S.W.2d 560 (Tex. Cr. App. 1991)......................................24

*Love v. State*, 861 S.W.2d 899 (Tex. Crim. App. 1993)......................................24

*Melancon v. State*, 66 S.W.3d 375 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (en banc)......................................33

*Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1991)..........................25

*Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998)..................................29

*Rankin v. State*, 974 S.W.2d 707 (Tex. Crim. App. 1996)..................................25

*Roberts v. State*, 963 S.W.2d 894 (Tex. App.—Texarkana 1998, no pet)...........24

*Rodriguez v. State,* 21 S.W.3d 562 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)......................................24

*Speth v. State*, 6 S.W.3d 530 (Tex. Crim. App. 1999)........................................34

*Stahl v. State*, 749 S.W.2d 826 (Tex. Crim. App. 1988)....................................33

*State v. Ballard*, 987 S.W.2d 889 (Tex. Crim. App. 1999)................................25

*Todd v. State*, 911 S.W.2d 807 (Tex. App.—El Paso, 1995, no pet.)..................34

*United States v. Bell,* 367 F.3d 452 (5th Cir. 2004)............................................33

*Woodall v. State*, 216 S.W.3d 530 (Tex. App.—Texarkana 2007, pet. granted) *aff'd sub nom. Holmes v. State*, 323 S.W.3d 163 (Tex. Crim. App. 2009).............26, 27

## CONSTITUTIONS, STATUTES, AND OTHER AUTHORITIES     PAGE

30 No. 26 West's Criminal Law News NL 58......................................35

TEX. CONST. art. I, § 19......................................23

TEX. CRIM. PROC. CODE ANN. art. 29.13 (West 2015)......................................31

TEX. R. APP. P. 39.7 (West 2011)......................................2

TEX. R. APP. P. 44.2 (West 2011)......................................28, 29

TEX. CODE CRIM. PROC. ANN. art. 42.12 (West 2015)...........................................34

TEX. R. APP. P. 9.4 (West 2011)..........................................................................38

U.S. CONST. amend. XIV.................................................................................23

## PRELIMINARY STATEMENT

On June 3, 2014, Appellant was charged by information with the offense of resisting arrest, and driving while intoxicated with a BAC greater than 0.15, alleged to have occurred on or about April 30, 2014. (I C.R. 10; II C.R. 8).[1] Appellant was brought to trial before a jury on March 23, 2015, and entered a plea of not guilty to resisting arrest and driving while intoxicated. (1 R.R. 2; 3 R.R. 10). The jury found Appellant guilty of both charges. (4 R.R. 76).

In cause number 458109 (resisting arrest) the trial court assessed punishment at: a $100 fine, court costs, one year confinement in the Bexar County jail probated for 18 months, 80 hours of community service, the APSE course, and ordered Appellant to write an apology letter to the complainant, Officer Steven Rivas of the San Antonio Police Department. (5 R.R. 11).

In cause number 458110 (driving while intoxicated), the trial court assessed punishment at: a $400 fine, court costs, 180 days confinement in the Bexar County jail probated for 180 days, 80 hours of community service, DWI Education class, the DIP Live class, a TAIP evaluation, Ignition Interlock with a camera for the full term of probation, and three days in the Bexar County Jail, held in abeyance by the

---

[1] Ms. Castillo will be referred to as "Appellant". The Clerk's Record in trial court cause no. 458109, and appellate court cause no. 04-15-00207 (resisting arrest) will be referred to as "(I 458109, and appellate court cause no. 04-15-00207 (resisting arrest) will be referred to as "(I C.R.)". The Clerk's Record in trial court cause no. 459110, and appellate court cause no. 04-15-00208 (DWI) will be referred to as "(II C.R.)". The reporter's record will be referred to as "(R.R.)". References to the reporter's record are not distinguished, as the records are identical. However, the reporter's record in cause no. 458110 was used to cite this brief.

trial court.  (5 R.R. 11-12).  Appellant gave timely notice of appeal and the trial court's certification of defendant's rights of appeal ensures Appellant has the legal right to appeal.  (I C.R. 30; II C.R. 26).

## STATEMENT OF FACTS

### The arrest

San Antonio Police Department Officer Steven Rivas ("Officer Rivas") was patrolling the 281 and Bitters area of San Antonio, Texas on April 30, 2014, at around 2:30 a.m. (3 R.R. 18, 24-25). While Officer Rivas was looking for impaired drivers, Appellant's Nissan minivan caught his attention when it crossed over the solid white line because, "it's a traffic violation." (3 R.R. 46). The officer followed the vehicle for a few minutes and eventually initiated a traffic stop right after the interchange from southbound 281 to westbound Loop 410. (3 R.R. 47). Appellant's vehicle stopped on the right shoulder before the McCullough exit. (3 R.R. 47). Officer Rivas instructed Appellant to move off the highway and park in the Cavender's Boot City parking lot. (3 R.R. 47-48). Appellant complied and the officer made contact with her. (3 R.R. 48). While Appellant retrieved her driver's license and insurance paperwork, Officer Rivas testified he smelled "a strong odor of intoxicants on her breath"; the officer also testified Appellant had slurred speech, and admitted to drinking two whiskey drinks at the Falls from 9:00 p.m. to 1:00 a.m. (3 R.R. 48-49, 50).

Officer Rivas asked Appellant to step out of the vehicle and began to qualify her to administer standard field sobriety tests. (3 R.R. 53) Officer Rivas next began administering the field sobriety tests including the horizontal gaze

nystagmus, the walk and turn test, and the one leg stand. (3 R.R. 59-60, 60-66, 66-67). After Appellant performed the battery of tests, Officer Rivas concluded, "That she was intoxicated. She was impaired." (3 R.R. 67).

Officer Rivas asked Appellant to place her hands on his patrol car. (3 R.R. 68). Appellant failed to immediately comply so the officer took her to the ground using a simple body slam take down maneuver in an attempt to grab her arms and handcuff her. (3 R.R. 70, 87). While Appellant was yelling and screaming, the officer was able to take her into custody. (3 R.R. 75).

Appellant sat on the curb and was read "her Miranda rights and a form called the DIC-24." (3 R.R. 75). The DIC-24 form "[i]s a state form asking for a sample of a person's breath and/or blood." (3 R.R. 77). The DIC-24 form was introduced into evidence as State's Exhibit 3 and published to the jury. (3 R.R. 78). Officer Rivas called both a supervisor, because placing someone on the ground "is considered a use of force report," and "EMS for precautionary reasons to check the defendant." (3 R.R. 79). Detective Quinn took photographs of any injuries and Appellant was transported to jail. (3 R.R. 81).

## The blood draw

Once in jail, Appellant refused to give a voluntary sample of her breath. (6 R.R. 9; 12). In response, Officer Rivas pursued, and was granted, a search warrant to draw Appellant's blood. (6 R.R. 9).

The blood sample was sent to Integrated Forensic Laboratories (IFL) for forensic testing. (6 R.R. 21). Senior Forensic Scientist Elizabeth Feller tested the two blood vials taken from Appellant on April 30, 2014. (6 R.R. 21).

The admissibility of evidence concerning this blood draw was a hotly contested issue at trial and is the focus of this appeal.

**The State's motions in limine and the excluded blood draw evidence**

**The written motion**

On March 25, 2015, the day of trial, the prosecutor filed a motion in limine seeking to: 1) "prohibit mention of, or allusion to, the past employment history of Intergrated Forensic Laboratory (IFL) analyst Elizabeth Feller, specifically, her termination by Cellmark Forensics prior to her employment with IFL and why;" and 2) "Any mention of any errors or mistakes made in a different cause, other than in the above listed and numbered cause of action, in which Elizabeth Feller, while employed by IFL, issued the Forensic Blood Alcohol Report." (II C.R. 17-18). The trial court granted the State's motion. (II C.R. 19).

Before voir dire, the State requested a hearing on the written motion in limine and the following exchange occurred on the record:

THE COURT: . . . I see that there has been a State's Motion in Limine in reference to Elizabeth Feller. Mr. Mehler, have you gotten that?

MR. MEHLER: I have.

THE COURT: Do you have anything in response to that Motion in Limine?

MR. MEHLER: I would absolutely object. I do believe her prior disciplinary record goes directly to her credibility as a witness as well as an expert.

THE COURT: State?

MR. HOOKER: Judge, the State doesn't plan on calling Miss Fellers as an expert in this case and, therefore, any discussion of a blood test or anything about IFL is totally prejudicial, is not probative at all, and I think will only lead to confuse the jury.

MR. MEHLER: Might I respond, Your Honor? I do believe the presence of blood, presence of warrant is an absolutely material fact that are completely relevant to the prosecution of this case and the circumstances surrounding everything. I believe it is absolutely admissible.

THE COURT: Mr. Mehler, unless you choose to call Miss Feller, Elizabeth Feller, I believe if the State doesn't bring her in I don't know how her test -- speaking of her termination or anything like that would be of any relevant value to the court proceedings. But if you do call her in or if you do want to put something on the record for the Court -- if you are going to want to approach when you are questioning somebody, you want to possibly go into it, please approach before you do that because I am going to grant this State's Motion in Limine just in part that you can re-approach and argue at any time. Okay?

MR. MEHLER: Sounds good, Your Honor.

THE COURT: All right. With saying that, State, just be aware of that. Okay?

MR. HOOKER: Yes, Judge. Thank you.

(2 R.R. 4-5).

## The State's oral motion in limine and Appellant's oral request for a continuance

After voir dire, but before testimony commenced, the prosecutor made a separate, oral motion in limine seeking to exclude the blood test and the following exchange occurred on the record:

THE COURT: State, do you have a Motion?

MR. HOOKER: Yes, Your Honor. At this time I think as the Court is aware and the defense is aware we will not be bringing down any blood expert to testify about the blood test or anything like that. There will be no forensic toxicology or anything like that, so we will be solely going on the officer's observations as far as loss of normal use of physical and mental faculties. Because of that, Judge, I believe that any testimony or statements about blood tests or what the blood would have shown or anything like that isn't relevant. It is prejudicial to the State. We would ask that any mention of blood being taken or anything like that be excluded.

THE COURT: Okay. Defense counsel.

MR. MEHLER: I would object, Your Honor. I do believe that, one, there was a blood warrant issued. It is absolutely a relevant fact. The officer will have personal testimony and personal knowledge of that warrant and the affidavit and the events leading up to it. I do believe it is absolutely relevant. The jury is absolutely entitled to hear it.

THE COURT: I have had several cases like this before. I am going to grant the Motion in Limine to exclude the portions -- the actual blood test, the actual taking of the blood and the blood warrant in this case. However, I will allow defense to bring up the fact it is a no refusal policy, that the proper avenues are to -- When they're investigating the case is the policy is a no refusal.

MR. MEHLER: Your Honor,

THE COURT: Hold on. And so I will allow you to go into that, but I believe that would be just more prejudicial and be confusing to the jury to hear about a blood test that unless -- Unless defense is going to bring in the evidence with the proper witnesses, I don't believe that it would be more probative than prejudicial.

MR. MEHLER: If I may respond.

THE COURT: You may respond.

MR. MEHLER: The officer swore to an affidavit, acquired a warrant. He has personal knowledge to that. He actually observed the blood being drawn. It's absolutely relevant to this case. I am not understanding why that is prejudicial to the jury to know blood was drawn. If it is stopped right there, I am not getting into --

THE COURT: Why would it be probative? That is the point. I am not asking you to answer it because I have already answered it. I don't believe it is more probative than prejudicial. I believe it will confuse the jury, and it won't be probative to the jury. Anything else from the State?

MR. HOOKER: Nothing at this time, Judge.

THE COURT: And, again, just to reiterate, if the defense counsel is going to bring forth that evidence, the Motion in Limine --

MR. MEHLER: I would ask for a Motion for Continuance. I have not been provided the addresses of the potential witnesses that could do this. I have not been provided their phone numbers pursuant to proper procedure. I have not been provided any of that. I would ask for a continuance at this point if you are not going to allow me to use their own officer against them.

THE COURT: That will be denied. I mean, one thing is is that if you want to go into the blood warrant, if you believe there was a discrepancy, approach the bench. We can speak at that time. Anything else from defense?

MR. MEHLER: No.

THE COURT:     Anything else from State?

MR. HOOKER:    Nothing from the State.

(3 R.R. 5-8).

## Denial of cross-examination

The state called Officer Rivas and during cross-examination by defense counsel the following exchange occurred on the record:

Q.          Okay. At the time of this incident -- You're familiar with who the District Attorney was at the time, right?

A.          Yes.

Q.          Susan Reed?

A.          Yes.

Q.          No refusal policy?

A.          Yes.

Q.          And after my client refused, what happened?

(3 R.R. 92).

The prosecutor objected and the trial court asked the parties to approach the bench. (3 R.R. 92). At the bench, and on the record, the following exchange took place:

MR. MEHLER:    I haven't gotten into it. I asked about policy to serve warrants after. I haven't said anything about blood yet, Your Honor.

THE COURT:     I believe you're trying to elicit the point.

MR. MEHLER:     It is their witness. They can instruct him he is not allowed to say anything about that.

THE COURT:     Have you instructed your witness?

MR. HOOKER:     Yes.

THE COURT:     That is fine.

(At the Bench concluded.)

(3 R.R. 92-93).

Defense counsel again attempted to get into the search warrant that accompanies a refusal under the "no refusal" policy:

Q.          (By Mr.Mehler) So a no refusal policy, right?

A.          Yes, sir.

Q.          You go get a search warrant, right?

A.          Yes.

Q.          And then take her to the hospital?

A.          No.

Q.          Where did you take her?

A.          There is a nurse's station at the magistrate's office.

Q.          Nurse's station?

A.          Yes.

Q.          Okay.

MR. MEHLER:     Your Honor, may I approach?

THE COURT:        Yes.

(At the Bench, on the record.)

MR. MEHLER:       I believe at this point he absolutely is free to disclose the search warrant after he has testified to his knowledge of it.

THE COURT:        If you want to -- since it has come out -- want to go over their search warrant, I mean -- It has been an objection at this point, but the Motion in Limine is not to go into the blood test on this case.

MR. HOOKER:       It is side bar. I thought we were going -- I did not think that was opened.

THE COURT:        I believe I agree with the prosecutor at this point. You're trying to open the door to this. You're not allowed to open the door unless you are going to have the person who tested the blood -- bring them in. I think we all know there was a blood test, correct?

MR. MEHLER:       That is part of the facts of the case, Your Honor.

THE COURT:        It is not relevant. It is not probative. It is not good for the jury. It is going to be confusing. So, no, you're not allowed to go into it.

MR. MEHLER:       Haven't gotten there yet.

THE COURT:        I agree. You are not going there unless you want to bring in somebody that, you know, can testify to that actual blood test. Unless you do that, you are not going into it. That is the Motion in Limine.

MR. MEHLER:       Haven't even gone there yet. You're talking about something I haven't done at this point,  with all due respect.

THE COURT:        I know, but I believe that I know where you're going with it. Do not do it.

MR. MEHLER:     I haven't yet so we're on the same page.

THE COURT:      I am not having this discussion about this. I am just telling you not to go into it.

MR. MEHLER:     Understand.

THE COURT:      Thank you. Go back.

The trial court

(At the Bench concluded.)

(3 R.R. 93- 95).

At this point, defense counsel attempted to get the search warrant checklist into evidence but was prevented from doing so by the trial court.

THE COURT:      You may proceed.

MR. MEHLER:     Just one second, Your Honor.

THE COURT:      Yes, sir.

MR. MEHLER:     May I approach?

THE COURT:      Yes.

(Defendant's Exhibit No. 1 marked for identification.)

Q. (By Mr. Mehler) Your Honor, (sic) I'm handing you what has previously been marked Defense Exhibit Number 1. Do you recognize that?

MR. HOOKER:     Judge, can we approach again? I apologize.

THE COURT:      Sure. In fact -- Sorry. Deputy Fox -- Take a seat -- take the jury out for five minutes at least.

The trial court excused the jury and the following exchange occurred:

THE COURT: All right.

MR. MEHLER: If I may.

THE COURT: What is the Defendant's Exhibit Number 1?

MR. MEHLER: It is the blood warrant checklist.

THE COURT: Sir, we're not going into this.

MR. MEHLER: It's part of his investigation, Your Honor. If I don't --

THE COURT: We're not going into it. You go over the fact that -- Y'all may be seated. The Motion in Limine, and let me reiterate, is not to go into the blood test on this case nor the search warrant. If you want to go into the search warrant as an affidavit that he made, you can, but not to that it is a blood search warrant.

MR. MEHLER: Absolutely, and I haven't. I was going to have him verify that this is what happens, if he recognizes this document, that he did seek a search warrant, that there was a search warrant issued.

THE COURT: We're not going into the search warrant. We are going into the fact that it's an affidavit. That is all we are going into. If you -- if you want him to testify to certain parts on there, if they, say, are in discrepancy of his report, that is fine. That is a sworn affidavit. I will allow that. I will not allow you to go into a search warrant for the blood or the blood. You already went over the policy of no refusal and that the next thing they are supposed to do is get a search warrant.

MR. MEHLER: I understand.

THE COURT: So this is not going to come in. The search warrant or blood for this case is not coming in. It is not good faith on your part to go into it when you know that it is not going to come in. Unless you are going to bring somebody else in here to testify to the blood, that is -- I mean.

MR. MEHLER: Your Honor, I understand, but I haven't even gotten there. I do believe that --

THE COURT: I think you have gotten there. I think you have gone there. What I am telling you is you have gone far enough. Okay?

MR. MEHLER: I respectfully disagree.

THE COURT: That is fine. You can respectfully disagree all you want. I am telling you what you can and cannot do. Okay. You have got to follow those rules. Are we in agreement on that?

MR. MEHLER: I understand. I would lodge a running objection to this ruling. I respectfully disagree with this Court. I will respect the Court's ruling.

THE COURT: Thank you. All right. Take a seat, please. Anything else from the State right now?

MR. HOOKER: No, Judge. Thank you.

THE COURT: State, just to let you know, I am not allowing a running objection, so if you do feel that it is going to be needed again, you need to object. That goes for both sides. Mr. Mehler, if you feel there there is anything that you need to object to, please object just as the State will.

MR. MEHLER: Your Honor, if we may address it, so I am not allowed to discuss the submission of the blood to Bexar County Medical Examiners? It's not IFL. Completely outside the Motion in Limine.

THE COURT: No. No. No. We are not getting into the blood test on this case. The only thing you can get into is the fact that it's a no refusal 24/7 in Bexar County at the time that this person was placed under arrest for driving while intoxicated.

MR. MEHLER: So I can't talk about the police investigation or anything that followed it for the record?

THE COURT:     For the record you cannot speak -- Listen to me again -- about the blood test for this case or the search warrant for this case. You can talk about policy that is in place, the 24/7 no refusal. You can go into that. Okay? That is what you can go into. Let's bring them back in. Everybody ready?

MR. HOOKER:    Yes, sir.

(3 R.R. 96-99).

The jury was brought back into the courtroom and defense counsel asked Officer Rivas to explain the no refusal policy. Officer Rivas explained, "[i]n Bexar County when a person is offered to give a sample of their breath and/or blood and they refuse, we type up a warrant and their blood is taken." (3 R.R. 99). Defense counsel requested to approach the bench and attempted one last time to convince the trial court to lift the motion in limine under the theory the officer opened the door. (3 R.R. 99). The trial court denied defense counsel's request, successfully shutting down any real chance of meaningful cross-examination. (3 R.R. 99). Defense counsel asked one last question about the no refusal policy and was forced to follow with "nothing further, Your Honor." (3 R.R. 99).

## POINT OF ERROR ONE

### APPELLANT WAS DENIED THE DUE PROCESS RIGHT TO PRESENT A DEFENSE

## POINT OF ERROR TWO

### THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION FOR CONTINUANCE

## POINT OF ERROR THREE

### THE TRIAL COURT'S ERRORS HAD A CUMULATIVE EFFECT

Appellant's first three points of error rely on identical facts and arguments and will be briefed together to avoid repetition.

**APPELLANT WAS DENIED THE DUE PROCESS RIGHT TO PRESENT A DEFENSE**

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' "

> *Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006) (citing *Crane v. Kentucky*, 476 U.S. 683, 689–90 (1986)).

**A.      Standard of review and applicable law**

The federal and state constitutions entitle an accused to due process and due course of law, respectively.  *See* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 19.  Compulsory process is an integral component, a core interest, of due process law.  *Washington v. Texas*, 388 U.S. 14, 19 (1967).  Compulsory process includes " 'the right to present a defense, the right to present the defendant's version of the

facts as well as the prosecution's to the jury so it may decide where the truth lies.' "

*Coleman v. State,* 966 S.W.2d 525, 527 (Tex. Crim. App. 1998) (quoting *Washington,* 388 U.S. at 19); *Rodriguez v. State,* 21 S.W.3d 562, 568 (Tex. App.— Houston [14th Dist.] 2000, pet. ref'd).

The Constitutional right of confrontation is violated when appropriate cross-examination is limited. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996) (citing *Hurd v. State*, 725 S.W.2d 249, 252 (Tex. Cr. App. 1987)). The scope of appropriate cross-examination is necessarily broad. *Id*. A defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias or interest for the witness to testify. *Id*. (citing *Lewis v. State*, 815 S.W.2d 560, 565 (Tex. Cr. App. 1991).

A trial court's decision to limit a defendant's cross-examination is reviewed under the abuse of discretion standard. *Love v. State*, 861 S.W.2d 899, 903 (Tex. Crim. App. 1993). A trial court may properly limit the scope of cross-examination to prevent prejudice, confusion of the issues, or marginally relevant interrogation. *Carroll*, 916 S.W.2d 497 (listing only the reasons applicable to this case). However, the defendant should be granted wide latitude even though he is unable to state what facts he expects to prove through his cross-examination. *Id*. This inquiry depends on the facts of each case. *Love*, 861 S.W.2d 904; *Roberts v. State*, 963 S.W.2d 894, 901 (Tex. App.—Texarkana 1998, no pet). If the trial court's

decision falls outside the "zone of reasonable disagreement," it has abused its discretion. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996) (op. on reh'g); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). The Fort Worth Court of Appeals recently recognized:

> The abuse of discretion standard, however, is viewed in light of and subject to constitutional protections. The Supreme Court of the United States reminds us that while states "have broad latitude under the Constitution to establish rules excluding evidence from criminal trial," "[t]his latitude . . . has limits . . . [T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Further, "an essential component of procedural fairness is an opportunity to be heard. That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence . . . when such evidence is central to the defendant's claim of innocence." Thus, a trial judge whose evidentiary ruling undermines or disregards a constitutional protection abuses his discretion; such a ruling cannot be within the zone of reasonable disagreement.

*Henley v. State*, 454 S.W.3d 106, 114 (Tex. App.—Fort Worth 2014, pet. granted) (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations and internal quotation marks omitted); *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (citations and internal quotation marks omitted); *State v. Ballard*, 987 S.W.2d 889, 893 (Tex. Crim. App. 1999) (also recognizing "[m]isapplication of the law to the facts of a particular case is a per se abuse of discretion.").

## B.     The trial court abused its discretion

In *Holmes v. State*, the Court of Criminal Appeals held the trial court's denial of defendants' pretrial motions to permit cross-examination of the State's

expert on the Intoxilyzer 5000 breath-testing machine deprived the defendants of the right to present a defense in violation of due process. *Holmes v. State*, 323 S.W.3d 163, 174 (Tex. Crim. App. 2009). The Court consolidated, and granted review, to eight separate cases where the defendants challenged the trial court's denial of a motion seeking to cross-examine the State's expert in "eight areas of concern about the internal workings" of the machine. *Id* at 172, 167.

In *Woodall* [2]*,* the State asked the trial court to take judicial notice of the underlying science which supports the Intoxilyzer breath-testing machine, but to leave open for cross-examination only the testing done pertaining to the tests made relating to this offense. *Woodall v. State*, 216 S.W.3d 530, 531 (Tex. App.—Texarkana 2007, pet. granted) *aff'd sub nom. Holmes v. State*, 323 S.W.3d 163 (Tex. Crim. App. 2009). The pretrial ruling ordered no cross-examination be made on the general topic of the possible fallibility of the Intoxilyzer machine. *Id*. at 536. Defense counsel objected at length, but the court ultimately ruled in favor of the State. *Id*. The Intoxilyzer breath test results were not introduced into evidence or otherwise presented to the jury. *Id*. at 531-32. The Court explained, "[t]he allowed scope of cross-examination is broad and wide-ranging and extends to any matter relevant to the issues." *Id*. The court held because the accuracy and reliability of the machine was clearly a matter relevant to an issue in the *Woodall*

---

[2] *Woodall* is one of eight consolidated cases granted review in *Holmes*. Every case granted review under *Holmes* has almost identical facts to the others.

case the trial court abused its discretion. *Id*.

The facts of this case are analogous to the facts of *Woodall* as affirmed in *Homles*. In this case, like in *Woodall* and *Holmes*, Appellant was also denied the right to present a defense when the trial court precluded meaningful cross-examination of the State's witness. Like the trial court in those cases, the trial court in this case, effectively shut down any meaningful cross-examination by Appellant by sustaining the state's objection to the line of questioning with regard to the blood draw and blood testing in this case, which was a relevant issue.

During cross-examination, the defense presented Officer Rivas with the Search Warrant Affidavit Checklist Sheet and marked it as Exhibit 1 for review. (II C.R. 14). The exhibit was an affidavit signed and sworn to by Officer Rivas attesting to the fact he personally witnessed a registered nurse conduct a blood draw of Appellant. (II C.R. 14). The court examined the exhibit and admonished defense counsel he was about to violate the motion in limine. (II C.R. 14).

It was the good faith belief of defense counsel that if the trial court had permitted cross-examination with regard to blood testing the following facts would have been elicited from Officer Rivas: 1) A search warrant was sought by Officer in this case, 2) A search warrant was granted, and 3) Officer Rivas personally witnessed a registered nurse serving the search warrant by drawing blood from the defendant. (II C.R. 15). Once the facts were in evidence, it was defense counsel's

intention to create reasonable doubt of Appellant's intoxication by inquiring into the surrounding facts and circumstances of the blood draw and subsequent blood test. Defense counsel's strategy was not to harass the witness with questions related to the blood analyst who tested the blood (see state's written motion in limine) rather defense counsel's strategy was to not allow the state to present a false impression to the jurors by making them believe this was not a blood draw case when it was. (II C.R. 15). The state would have been free to explain why the blood sample was not offered. Not allowing the blood draw and blood test evidence deprived Appellant of a fair trial, violated the right to due process, and Appellant's Sixth Amendment right to meaningful cross-examination and the right to confrontation. The evidence was central to Appellant's claim of innocence and the trial court's evidentiary ruling undermined and disregarded her constitutional protections.

Therefore, it was constitutional error and an improper bar to evidence to preclude testimony and evidence of the blood draw and blood testing in this case. Accordingly, the trial court abused its discretion.

## C.     The trial court's error is reversible

Under Texas Rule of Appellate Procedure 44.2(a), if the appellate record reveals a constitutional error, the judgment of conviction must be reversed unless the error did not contribute to the conviction or punishment beyond a reasonable

doubt. *See* TEX. R. APP. P. 44.2(a) (West 2015); *see also Davis v. Alaska*, 415 U.S. 308, 318 (1974) (holding that denial of effective cross-examination is "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it"). The reviewing court's primary question is whether there is a "reasonable possibility" that the error might have contributed to the conviction. *Henley*, 454 S.W.3d 117-18 (Tex. App.—Fort Worth 2014, pet. granted) (citing *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)).

In this case, the denial of meaningful cross-examination was a serious denial of Appellant's Sixth Amendment rights. The trial court effectively eviscerated Appellant's defense, defense counsel's trial strategy, and undoubtedly contributed to Appellant's conviction and punishment. The trial court denied Appellant the fundamental right to put on a complete defense and violated the due process right to a fair trial. Defense counsel asserted in the Bill of Exception the trial court's denial violation of Appellant's fundamental rights "have forced her counsel to provide ineffective assistance as he [was] precluded from providing the defense necessary in this matter." (II C.R. 16).

Further, the presence of the evidence collected by the state during its investigation of this case was relevant to the proceedings and should have been presented to the jury. The facts Appellant sought to elicit through blood testing testimony were essential to the defense of this case as the central question and

theme defense counsel sought to build reasonable doubt by was through the testimony asking—"Where's the blood?". (II C.R. 16). The lack of blood testing evidence and the denial of cross-examination on that topic also allowed the state to create a false impression for the jury (the exact opposite result the trial court hoped to accomplish) when the blood draw and blood testing evidence Appellant sought to present painted "a factually correct picture, that blood was drawn and the state has chosen not to present it." (II C.R. 16).

When viewing the record as a whole it is apparent there is a "reasonable possibility" that the trial court's denial of Appellant's right Sixth Amendment right to cross-examine Officer Rivas contributed to Appellant's convictions.

### D. Conclusion

The trial court abused its discretion by denying Appellant the due process right to present to present a defense and the trial court's constitutional error undoubtedly contributed to Appellant's convictions. Accordingly, the judgments of conviction should be reversed and this case remanded to the trial court for a new trial.

**THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION FOR CONTINUANCE**

### A. Applicable law and standard of review

Article 291.3 Texas Code of Criminal Procedure provides, "A continuance or postponement may be granted on the motion of the State or defendant after the

trial has begun, when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had. TEX. CRIM. PROC. CODE ANN. art. 29.13 (West 2015).

Although a motion for continuance should be in writing, an oral request for delay may be addressed to the equitable powers of the trial court. *Gonzalez v. State*, 04-07-00804-CR, 2008 WL 5083125, at *3 (Tex. App.—San Antonio Dec. 3, 2008, pet. ref'd) (mem. op.) (not designated for publication) (citing *Deaton v. State*, 948 S.W.2d 371, 374 (Tex. App.—Beaumont 1977, no pet.).

A matter of continuance is generally within the discretion of the trial judge, and the court reviews a trial court's ruling on a motion for continuance under the abuse of discretion standard. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007); *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996); *see also Deaton*, 948 S.W.2d at 374. To establish an abuse of discretion, there must be a showing that the defendant was actually prejudiced by the denial of his motion. *Gallo*, 239 S.W.3d at 764; *Janecka*, 937 S.W.2d at 468. When reviewing the trial court's denial of a motion for continuance, the reviewing court examines the circumstances presented to the trial court. *See Heiselbetz v. State*, 906 S.W.2d 500, 517 (Tex. Crim. App. 1995).

**B.     The trial court abused its discretion by actually prejudicing Appellant**

No reasonable amount of diligence could have anticipated the State's motions in limine. Defense counsel had prepared for trial and based his trial strategy on building reasonable doubt using the blood evidence he anticipated being able to talk about using the state's own witness.   Defense counsel was completely caught by surprise when he was precluded from talking about the blood and timely requested a continuance.  (3 R.R. 7).  Defense counsel's surprise was compounded when the state requested, and trial court granted, a second motion in limine requesting no mention of any blood at all.  The trial court denied defense counsel's request for a continuance and advised him to approach the bench if he "believed there was a discrepancy."  (3 R.R. 7).  At that point in time the burden shifted to Appellant to bring in the witnesses to prove up the blood test if he wanted to discuss it.  (3 R.R. 7).  Defense counsel had not been provided the addresses or contact information for any potential witness that could have been brought in to prove the blood test up and did not have the burden to do so until that point in the trial.

**C.     Conclusion**

When reviewing the circumstances presented to the trial court it is clear Appellant was actually prejudiced.  A continuance would have cured any harm by allowing Appellant, through defense counsel, to meet the newly conferred burden

of producing a witness that was not otherwise known to be needed until the day of trial. Therefore, the trial court abused its discretion and Appellant requests the judgments of conviction be reversed and remanded to the trial court for a new trial.

**THE TRIAL COURT'S ERRORS HAD A CUMULATIVE EFFECT**

**A.    Standard of Review**

A number of errors, even if harmless when separately considered, may be harmful in their cumulative effect. *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) (citing *Stahl v. State*, 749 S.W.2d 826, 832 (Tex. Crim. App. 1988)); *Melancon v. State*, 66 S.W.3d 375, 385 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (en banc). This doctrine provides relief only if the cumulative effect rendered the phase of the trial fundamentally unfair. *See Estrada v. State*, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010) (citing *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004)).

**B.    The trial court's errors had rendered Appellant's trial fundamentally unfair**

Appellant hereby incorporates by reference the arguments and authorities found in the above two points of error set forth, *supra*. The trial court's error in precluding meaningful cross-examination and eviscerating Appellant's right to present a complete defense combined with the trial court's denial of Appellant's

oral motion for continuance rendered the guilt/innocence phase of the trial fundamentally unfair.

## C.    Conclusion

Therefore, the trial court's errors had a cumulative effect. Accordingly, Appellant requests the convictions be reversed and these cases remanded to the trial court for a new trial.

## POINT OF ERROR FOUR

THE APOLOGY LETTER ORDERED AS A CONDITION OF COMMUNITY SUPERVISION IN CAUSE NO. 458109 VIOLATES APPELLANT'S CONSTITUTIONAL RIGHT AGAINST SELF-INCRIMINATION

Along with the discretionary powers to decide whether to grant community supervision, the trial court also has discretion in determining the conditions to be imposed. *Speth v. State*, 6 S.W.3d 530, 533 (Tex. Crim. App. 1999). The Code of Criminal Procedure sets only general limits on the conditions of community supervision that may be fashioned by trial courts. It provides, "The judge may impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant." TEX. CODE CRIM. PROC. ANN. art. 42.12 § 11(a) - (b) (West 2015); Absent an abuse of discretion, the condition will not be disturbed. *See Todd v. State*, 911 S.W.2d 807, 818 (Tex. App.—El Paso, 1995, no pet.).

Appellant was ordered to write an apology letter to San Antonio Police Department Officer Steven Rivas, the complainant in cause no. 458109 (resisting arrest), as a condition of community supervision. (5 R.R. 11; I C.R. 1). Appellant asserts this condition of probation violates her right against self-incrimination during the pendency of this appeal and constitutes an abuse of discretion. Texas appellate courts have not addressed the question of whether a condition of probation requiring a defendant to write an apology letter violates the right against self-incrimination during the pendency of a direct appeal.

In *Comm. v. Melvin*, the Court held a portion of a defendant's sentence that required her to write letters of apology for her crimes violated the defendant's right against self-incrimination. *See* 30 No. 26 West's Criminal Law News NL 58 (citing *Comm. v. Melvin* 2013 PA Super 288, 2013 WL 6096222 (2013)). In that case, the defendant, a former judge, was ordered to write an apology letter to every judge and justice in the Commonwealth and to every former member of her judicial staff and of the staff of her sister, who had been a state senator. The sentencing order preceded the resolution of the defendant's direct appeal of the underlying convictions and sentence. *Id*. The court explained, if the defendant's conviction was reversed and the charges retried, the possibility existed that the apology letters could be used as evidence against her. *Id*. The issue was one of first impression in Pennsylvania, as it is in Texas. *Id*.

Appellant asserts the same argument as asserted in *Melvin*, like in *Mevin* if Appellant is required to write an apology letter and the trial court's judgments are reversed, then the possibility exists the State may introduce the letter as evidence of Appellant's guilt as permitted by Tex. R. Evid. 801(2).

Therefore, the condition of probation requiring Appellant to write an apology letter to Officer Rivas violates her right against self-incrimination during the pendency of this appeal. Accordingly, Appellant requests that condition of probation be reversed and the judgment in Cause No. 458109 be reformed to eliminate the condition of probation requiring Appellant to write an apology letter to Officer Rivas.

## PRAYER FOR RELIEF

Appellant prays that this Honorable Court sustain the points of error presented and requests this Honorable Court reverse the judgment of the trial court and remand these cases for a new trial, or in the alternative reform the judgments of the trial court. Appellant further requests any other relief to which she may be legally entitled.

Respectfully submitted,

LAW OFFICE OF DANIEL DE LA GARZA, PLLC

/s/ Daniel De La Garza
Daniel De La Garza
Texas Bar No. 24077965
1800 McCullough
San Antonio, Texas 78212
(210) 263-1146 office
(210) 855-6274 fax
Daniel.DeLaGarza@me.com

LAW OFFICE OF DANIEL MEHLER

/s/ Daniel Mehler
Daniel Mehler
Texas Bar No. 24085752
The Law Office of Daniel Mehler
115 E. Travis Street, Suite 1500
San Antonio, Texas 78205
(210) 816-0529 office
(210) 519-2856 fax

Attorneys for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon the District Attorney of Bexar County, Texas, on the 17th day of July 2015, by email to: j.brandon@bexar.org.

/s/ Daniel De La Garza
Daniel De La Garza

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) Texas Rules of Appellate Procedure, the undersigned counsel certifies that this brief complies with the type-volume limitations of TEX. R. APP. PROC. 9.4(e)(1).

1.       Exclusive of the portions exempted by Tex. R. App. Proc. 9.4 (i)(1), this brief contains 7,426 words printed in a proportionally spaced typeface.

2.       This brief is printed in a proportionally spaced, serif typeface using Times New Roman 14 point font in text, with 12 point foot used for any footnotes.

3.       Upon request, undersigned counsel will provide a copy of the Word printout to the Court.

4.       Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Tex. R. App. Proc. 9.4, may result in the Court striking this brief and imposing sanctions against the person who signed it.

*/s/ Daniel De La Garza*
Daniel De La Garza